## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAUREN HALL, on behalf of herself and others similarly situated, | Civ. A. No.: 3:17-cv-03997 |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |
| v. | |
| WELCH FOODS, INC., A COOPERATIVE and THE PROMOTION IN MOTION COMPANIES, INC. | [Previously pending in the Superior Court of New Jersey, Monmouth County, Law Division, Docket No. MON-L-1334-17] |
| Defendants. | |

Lauren Hall ("Hall" or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Welch Foods, Inc., a Cooperative ("Welch Foods"), which does business using its trademarked name "Welch's," and The Promotion in Motion Companies, Inc. ("Promotion in Motion") (collectively, "Defendants"), demanding a trial by jury, and alleging as follows:

### NATURE OF THE CASE

1.      This is a proposed class action seeking redress for Defendants' unconscionable and deceptive[1] consumer practices in misrepresenting the fruit content and the nutritional and health qualities of Welch's fruit snacks[2] (the "Fruit Snacks" or "Products").

---

[1] The terms "deceptive," "deceive," "deceptively," and "deception" encompass other descriptive terms, including various forms of the words: mislead, misrepresent, untrue, unfair, false, disparage, and unlawful.

[2] The Products at issue include but are not limited to Welch's Mixed Fruit Snacks, Island Fruits Fruit Snacks, Reduced Sugar Mixed Fruit Fruit Snacks, Berries 'n Cherries Fruit Snacks, Concord Grape Fruit Snacks, White Grape Raspberry Fruit Snacks, Strawberry Fruit Snacks, Tangy Fruits Fruit Snacks, Fruit Punch Fruit Snacks, White Grape Peach Fruit Snacks, Apple Orchard Medley Fruit Snacks, Strawberry Fruit 'n Yogurt Snacks, Blueberry Fruit 'n Yogurt Snacks, Strawberry Creamy PB&J Fruit Snacks, Strawberry Crunchy PB&J Fruit Snacks, Grape Creamy PB&J Fruit Snacks, Grape Crunchy PB&J Fruit Snacks, Strawberry Fruit Rolls, Berry Fruit Rolls, and Tropical Punch Fruit Rolls. Claims against Defendant Promotion in Motion are limited to the Fruit Snacks, Fruit 'n Yogurt Snacks, and Fruit Rolls Products.

2.      From six years prior to the date of this filing to the present (the "Class Period"), Defendants have engaged in a deceptive marketing campaign to convince consumers that Welch's Fruit Snacks contain significant amounts of the actual fruits shown in the marketing[3] and on the labeling[4] of the Products, are nutritious and healthful to consume, and are more healthful than similar products.

3.      For example, in a May 19, 2009 press release announcing the launch of the Island Fruits variety of the Fruit Snacks, Michael Rosenberg, President and CEO of Promotion in Motion, claimed, "Like all Welch's® Fruit Snacks, new Island Fruits is made with Real Fruit and Fruit Juices . . . . It's a better alternative to lots of other snacks as it also contains 100% of the daily value of Vitamin C, 25% of the daily value of Vitamins A and E and is fat free. We find that Mom is putting one pack of Welch's® Fruit Snacks *Island Fruits* in her kid's lunchbox—and keeping one pack for herself."[5] Indeed, Defendants label and market the Fruit Snacks as "Made With REAL Fruit,"[6] prominently depict a cornucopia of characterizing fruits on the front of each package, and prominently claim that "*Fruit* is our 1st Ingredient!"

4.      However, Defendants' Fruit Snacks contain only minimal amounts of the vibrantly depicted fruits, and are no more healthful than candy. In fact, two of the first three ingredients in the Fruits Snacks are added sweeteners.

---

[3] Variants of the words "marketing," and "market" refer to all forms of advertising in all forms of media, including but not limited to print advertisements, television, and radio commercials, Product labels, viral marketing, incentives, and websites.

[4] The term "labeling" encompasses other descriptive terms, including various forms of the words: labels, labeling, packages, and packaging.

[5] Press Release, Promotion in Motion Inc., Promotion in Motion Expands Line of Mom-Approved Fruit Snacks (May 19, 2009), http://www.promotioninmotion.com/wp-content/uploads/2009/05/Welchs_Goes_Tropical.pdf (last visited Mar. 23, 2017).

[6] Although Defendants altered the packaging for a time using the phrase "Now Made With Even More Fruit," Defendants have reverted to use of the phrase "Made With REAL Fruit."

CLASS ACTION COMPLAINT

5.      On average, sugar makes up 40% of each serving of the regular Fruit Snacks, 60% of each serving of the Fruit 'n Yogurt Snacks, more than half of each serving of the PB & J Snacks, and about 40% of the Fruit Rolls Snacks.

6.      The Products are mostly a combination of corn syrup, sugar, modified corn starch, juice from concentrate, and artificial flavors and dyes.

7.      The fruits that Defendants depict in the marketing and labeling of the Fruit Snacks are not the most predominant fruit in the Products. And Defendants are only able to claim that "*Fruit* is our 1st Ingredient!" by violating federal labeling law.[7]

8.      Thus, although Defendants market their Fruit Snacks as healthful and nutritious, these Products are devoid of the health benefits Plaintiff and other reasonable consumers associate with consuming real fruit.

9.      The amount of fruit in the Fruit Snacks has a material bearing on price and consumer acceptance. Through the marketing, labeling, and overall appearance of the Fruit Snacks, Defendants create the false impression that the fruit named and depicted on the labeling is present in an amount greater than is actually the case. Thus, Defendants are required to display the true percentage of fruit in the Product name on the front label, pursuant to 21 C.F.R. § 102.5. Defendants violate this requirement.

10.     Because the Defendants fail to reveal the basic nature and characterizing ingredients—specifically, the true fruit content—of the Fruit Snacks, Defendants' Fruit Snacks are not only deceptively labeled and marketed, they are also misbranded under Sections 403(a) and

---

[7] *See* 21 C.F.R. 101.4(a)(1), (b) (requiring ingredients to be listed in descending order of predominance by weight by their common or usual name, which must be specific and non-generic); FDA Guidance for Industry: A Food Labeling Guide, https://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm064880.htm#juice (stating that a collective name for a variety of different fruit juices may not be grouped in the ingredient statement, "e.g., Fruit Juices (grape, apple, cherry)").

403(q) of the Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 343(a) and (q). The Products cannot be legally manufactured, advertised, distributed, or sold in the U.S. as they are currently labeled. *See* 21 U.S.C. § 331.

11.     Defendants have been able to convince consumers to buy their Products over other similar snacks by deceiving consumers. Plaintiff and other reasonable consumers relied on Defendants' representations that the Fruit Snacks (1) contain significant amounts of the named and depicted fruits, (2) are nutritious and healthful to consume, and (3) are more healthful than similar products.

12.     Defendants' deceptions played a substantial part in influencing Plaintiff's decisions to purchase the Fruit Snacks. Plaintiff relied on Defendants' packaging and labeling, including the misrepresentations of vitamin and fruit content, to form her belief that the Fruit Snacks were a more healthful alternative to other sweet snacks. If Plaintiff had known the true fruit content, as well as the true nutritional and health qualities of the Fruit Snacks she purchased, she would not have purchased the Fruit Snacks.

13.     Defendants' deceptive statements regarding the Fruit Snacks violate state and federal law. Plaintiff asserts claims on behalf of herself and on behalf of all citizens of New Jersey who purchased the Fruit Snacks for Defendants' violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* ("CFA"), the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 through 18 ("TCCWNA"), and for fraud, breach of express and implied warranties, and unjust enrichment.

## PARTIES

### A.     Plaintiff

14.     Plaintiff Lauren Hall ("Plaintiff") is a citizen of New Jersey. She resides in Monmouth County, New Jersey, and bought Defendants' products in Monmouth County over the course of approximately seven years. During the Class Period, Plaintiff Hall purchased Defendants' Fruit Snacks for herself and her family.

15.     Plaintiff wished to purchase healthy snacks for her family. When Plaintiff saw Defendants' misrepresentations prior to and at the time of purchase, she relied on Defendants' representations and claims that the Fruit Snacks contained significant amounts of the actual fruit Defendants emphasized in the marketing and on the labeling of the Products, were nutritious and healthful, and were more healthful than similar products.

16.     Plaintiff typically purchased several varieties of the Fruit Snacks weekly from the Acme located at 2007 NJ-35, Wall, New Jersey 07719, both before and after Defendants' reformulation of the Fruit Snacks in or around 2015 Plaintiff suffered injury because she relied on Defendants' misrepresentations and would not have purchased the Fruit Snacks had Defendants not made misrepresentations in the Products' marketing and labeling. In the future, if Plaintiff knew that the Products had been changed to conform to the representations on their labels, e.g., that the Products actually were as depicted and represented, she would continue to purchase the Fruit Snacks. At present, however, Plaintiff cannot be confident that the marketing and labeling of the Products is, and will be, truthful and non-deceptive.

### B.     Defendants

17.     Defendant Promotion in Motion is a corporation organized under the laws of New Jersey. Its principal place of business is located at 25 Commerce Drive, Allendale, New Jersey 07401. Promotion in Motion is a nationally and internationally prominent maker of fruit snacks,

fruit rolls, and private label confections and food products, with both domestic and international operations. Promotion in Motion's other proprietary or licensed brands include SUN MAID® Milk Chocolate Raisins, FISHER® Milk Chocolate Peanuts, NASCAR® Speed Strips™, SOUR JACKS® Sour Candies, NUCLEAR SQWORMS® Sour Neon Gummi Worms, BUDDY BEARS® and ORIGINAL GUMMY FACTORY® Gummi Candies, and TOGGI® Fine Chocolate Wafers. Promotion in Motion licenses the trademarked name "Welch's" from Defendant Welch Foods.

18.     Defendant Welch Foods is a corporation organized under the laws of Michigan. Its principal executive office is located at 300 Baker Avenue, Suite 101, Concord, Massachusetts 01742.

19.     Promotion in Motion produces, markets, and distributes the Fruit Snacks under license from Welch Foods.

## JURISDICTION AND VENUE

20.     All claims in this matter arise exclusively under New Jersey law.

21.     Venue is proper in this county because Plaintiff resides in this county, purchased the Fruit Snacks in this county, and Defendants do business throughout this county.

## GENERAL ALLEGATIONS

22.     Consumers increasingly and consciously seek out healthy foods and snacks— placing value on healthy fruit-based snacks that contain less added sugar. Consumers seek these types of snacks for various reasons, including perceived benefits of avoiding disease, and attaining health and wellness for themselves and their children and families.

23.     In addition, scientific data shows that it is difficult to meet nutrient needs while staying within calorie requirements if you consume more than 10 percent of your daily calories

from added sugar.[8] Parents seek healthier options by seeking to purchase snack products with less sugar. And scientific evidence indicates that excess sugar contributes to numerous chronic health problems such as heart disease and type 2 diabetes.[9]

24.     Consumers also seek to avoid artificial food dyes (which have been shown to exacerbate symptoms of ADHD[10]), and preservatives such as citric acid. Given the consumer-driven demand for products without artificial colors, particularly in children's foods, manufacturers like General Mills have announced that they will reformulate their products to remove them.[11] Defendants' Products, by contrast, contain artificial colors such as Red 40 and Blue 1.

25.     Defendants' deceptive practices capitalize on consumers' desire to purchase healthier snacks, and snacks that contain more fruit and less added sugar.

26.     According to Promotion in Motion, it "is one of the 100 largest candy companies in the world."[12]

27.     Promotion in Motion's CEO, Michael Rosenberg ("Rosenberg"), has stated, "When I looked at the fruit snacks segment, all I saw were cartoon-licensed fruit snacks…I believed there

---

[8] Susan Mayne, *Putting Added Sugars Into Context for Consumers*, FDA Voice, Food and Drug Admin., http://blogs.fda.gov/fdavoice/index.php/2015/07/putting-added-sugars-into-context-for-consumers/ (last visited Mar. 23, 2017).

[9] American Heart Ass'n, Understanding Childhood Obesity, *available at* http://www.heart.org/idc/groups/heart-public/@wcm/@fc/documents/downloadable/ucm_428180.pdf

[10] *See, e.g.*, David Schab, *Do Artificial Food Colors Promote Hyperactivity in Children with Hyperactive Syndromes? A Meta-Analysis of Double-Blind Placebo-Controlled Trials*, 25 J. Developmental & Behavioral Pediatrics 423-34 (Dec. 2004).

[11] *No More Artificial Colors for Trix or Reese's Puffs*, N.Y. Times (June 23, 2015), *available at* http://www.nytimes.com/2015/06/23/business/no-more-artificial-colors-for-trix-or-reeses-puffs.html.

[12] Promotion in Motion website, About Us, http://www.promotioninmotion.com/about-us/ (last visited Mar. 31, 2017).

CLASS ACTION COMPLAINT

was an opportunity for a slightly healthier fruit snack that could be targeted towards both moms and schools."[13]

28.    Promotion in Motion then licensed a fruit snack under Pepsi-Cola Company's Slice brand. However, after Pepsi-Cola cancelled the licensing arrangement, Promotion in Motion refined its fruit snack formulation, and Rosenberg approached Welch Foods about a licensing agreement using the "Welch's" brand.[14]

29.    Welch Foods boasts that it is a "revered, trusted American icon, decade after decade," and acknowledges that consumers expect "high quality" from Welch's.[15] Moreover, Welch Foods promises that it "approach[es] [its] work with integrity and honesty, which helps [it] earn [its] consumers' trust."[16] Welch Foods promises consumers that even though "[w]e're best known for 100% Grape Juice and Jellies . . . you'll find our name—and the same exceptional quality—on fresh produce, freezer pops and more."[17]

30.    The trademarked name "Welch's" is one of the most respected and well-known names in the world when it comes to 100% fruit juice and grapes. Plaintiff and other reasonable consumers trust the Welch's name when it comes to expecting healthy, fruit-based snacks for their children.

31.    Indeed, Defendants emphasize this reputation on the labeling of their Fruit Snacks. See Illustration 1 below.

---

[13]    Available    at http://digital.bnpmedia.com/article/Promotion+In+Motion+Cos.+Inc%3A+In+Overdrive/1396978/0/article.html.

[14] *Id.*

[15] Welch Foods 2013 Annual Report, at 2, 15, *available at* http://www.welchs.com/docs/default-source/Annual-Reports/welchs_ar13_final_lowres2-front.pdf.

[16] Welch Foods' website, Careers, http://www.welchs.com/about-us/careers/why-choose-welch's (last visited Mar. 23, 2017).

[17] Welch Foods' website, Products, Food and Snacks, http://www.welchs.com/products/food-and-snacks (last visited Mar. 23, 2017).

**Illustration 1**
**Welch's Fruit Snacks, Mixed Fruit**



32.    Trading on "Welch's" reputation, Promotion in Motion fulfilled Rosenberg's vision of producing a fruit snack product that appears as a healthier fruit snack option to be marketed to parents and schools.

33.    Because of Welch's reputation, Defendants are able to capitalize on Plaintiff's and other consumers' attempts to feed their children healthful, nutritious, and fruit-based foods, by deceiving Plaintiff and other reasonable consumers about the nutritional and health qualities of the Fruit Snacks.

A.    **Defendants' Deceptive Marketing of the Fruit Snacks**

34.    Defendants market the Fruit Snacks as healthful and nutritious, claiming the Fruit Snacks are "wholesome," and are of a "quality that can only be Welch's."[18]

35.    Defendants emphasize the claim that the Fruit Snacks are "Made With REAL Fruit," and pair this claim with images of the characterizing fruit. See Illustration 2 below.

**Illustration 2**
**Welch's Fruit Snacks, Mixed Fruit**



---

[18] Welch Foods' website, Products, Fruit Snacks, http://www.welchs.com/products/food-and-snacks/fruit-snacks (last visited June 26, 2017).

CLASS ACTION COMPLAINT

36.    For example, the labeling for Defendants' Berries 'n Cherries Fruit Snacks prominently displays pictures of strawberries, blueberries, raspberries, and cherries, along with a picture of these berries next to the large "Made With REAL Fruit" claim. See Illustration 3 below.

**Illustration 3**
**Welch's Fruit Snacks, Berries 'N Cherries**



**Ingredients (prior to 2015 reformulation):**[19]

Juice from Concentrate (Apple, Grape, Pear, Peach, and Pineapple**), Corn Syrup, Sugar, Modified Corn Starch**, Fruit Purees (**Strawberry, Raspberry, Blackberry, Blueberry, and Cherry**), Gelatin, Citric Acid, Lactic Acid, Natural and Artificial Flavors, **Ascorbic Acid** (Vitamin C), **Alpha Tocopheryl Acetate** (Vitamin E), **Vitamin A Palmitate**, Sodium Citrate, Coconut Oil, Caranuba Wax, **Red 40 and Blue 1**

**Ingredients (following 2015 reformulation):**

Fruit Puree (Pear, Peach, Strawberry, Raspberry, Blackberry, Blueberry and Cherry), **Corn Syrup, Sugar, Modified Corn Starch**, Gelatin, Citric Acid, Lactic Acid, Natural and Artificial Flavors, **Ascorbic Acid (Vitamin C), Alpha Tocopherol Acetate (Vitamin E), Vitamin A**

---

[19] Following a lawsuit in 2015 alleging misrepresentation based upon Defendants' ingredient representations, Defendants reformulated the Fruit Snacks to include more "Fruit Puree."

**Palmitate**, Sodium Citrate, Coconut Oil, Carnauba Wax, **Red 40**, and **Blue 1**.

37.    Indeed, Defendants repeat the same deceptive fruit claims throughout their marketing campaign. For example, Defendants' marketing is replete with claims like "Made With REAL Fruit," "We put the fruit in fruit snacks," "*Fruit* is our 1st Ingredient!", and prominent graphics of fresh fruit of the type named in each Fruit Snacks variety.

38.    Defendants further represent that the Fruit Snacks are healthful and contain "100% Vitamin C," "25% Vitamins A & E," and "no preservatives." See Illustration 4 below.

**Illustration 4**
**Welch's Fruit Snacks, Strawberry**



**INGREDIENTS:** JUICE FROM CONCENTRATES (PEAR, PEACH, AND PINEAPPLE), CORN SYRUP, SUGAR, MODIFIED CORN STARCH, STRAWBERRY PUREE, GELATIN, CITRIC ACID, LACTIC ACID, NATURAL AND ARTIFICIAL FLAVORS, ASCORBIC ACID (VITAMIN C), ALPHA TOCOPHEROL ACETATE (VITAMIN E), VITAMIN A PALMITATE, SODIUM CITRATE, COCONUT OIL; CARNAUBA WAX, AND RED 40.

39.     Plaintiff and other reasonable consumers rely on Defendants' material representations when they purchase the Fruit Snacks—believing that the Fruit Snacks are healthful and made with significant amounts of the fruit depicted in the marketing and labeling of the Fruit Snacks.

40.     Defendants violated the trust of Plaintiff and class members because the Fruit Snacks are not the fruit-packed healthy snacks that their marketing and labeling represent them to be.

**B.     The Fruit Snacks Do Not Contain Significant Amounts of the Fruits Depicted, and Are Not Healthful**

41.     Defendants' claims about the fruit content and the nutritional qualities and healthfulness of the Fruit Snacks are deceptive. Although the marketing and labeling of the Fruit Snacks depict certain fruits, those fruits are not the predominant ingredient or even the most prominent fruit in the Products. Instead, the Fruit Snacks contain significant amounts of sweeteners and added sugars, as well as artificial flavors and artificial colors.

42.     For example, the marketing and labeling for the Berries 'n Cherries Fruit Snacks prominently feature depictions of Berries and Cherries, but the Products mostly contain pear puree and peach puree. The Product also does not provide any dietary fiber, a key substance found in "real fruit" that is essential for good health.

43.     Prior to Defendants' reformulation of the Products in 2015, there was even less fruit content. For example, the Berries 'n Cherries Fruit Snacks mostly contained apple, grape, pear, peach, and pineapple juice from concentrate, rather than any form of fruit puree. These are sugary

juices that in no way resemble the nutrient content or health benefits of "real fruit." Moreover, ingredients derived from berries or cherries appeared in the ingredients list only after corn syrup, sugar, and modified cornstarch.

44.     In short, Defendants' Fruit Snacks contain very little of the fruit Defendants depict in the Products' marketing and labeling.

45.     Defendants represent to Plaintiff and other consumers that the Fruit Snacks are healthful despite the fact that the Fruits Snacks are made in large part with corn syrup, sugar, and modified cornstarch. The products also contain at least two forms of added sugar.

46.     Before Defendants were sued for their misrepresentations in 2015, the ingredients list for the Products, which lists ingredients in descending order of predominance by weight,[20] listed fruit purees only after all of these unhealthful and non-nutritious ingredients. Following the reformulation, Defendants began listing "fruit puree" as the first ingredient, and claiming that "*Fruit* is our 1st ingredient!" However, Defendants violate federal Food and Drug Administration ("FDA") law in order to make this representation. By grouping all fruit puree ingredients together, e.g., "fruit puree (pear, peach, strawberry, raspberry, blackberry, blueberry and cherry"),[21] Defendants represent that fruit puree is the most predominant ingredient by weight. However, FDA does not permit these separate ingredients to be grouped together in the ingredient statement.[22] If Defendants did not group the different types of fruit puree together, fruit puree likely would be

---

[20] 21 C.F.R. § 101.4.

[21] *See* Ingredients List for Berries 'n Cherries Fruit Snack, http://www.welchsfruitsnacks.com/products/ (last visited Mar. 30, 2017).

[22] *See* 21 C.F.R. 101.4(a)(1), (b) (requiring ingredients to be listed in descending order of predominance by weight by their common or usual name, which must be specific and non-generic); FDA Guidance for Industry: A Food Labeling Guide, https://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm064880.htm#juice (stating that a collective name for a variety of different fruit juices may not be grouped in the ingredient statement, "e.g., Fruit Juices (grape, apple, cherry)").

CLASS ACTION COMPLAINT

less predominant than the added sugars in the Products. This type of grouping misleads Plaintiff and other reasonable consumer into believing that there is more fruit in the products than is actually the case.

47.     In fact, there is only a tiny amount of fruit-like ingredients in the Products—even with the increased fruit puree. To illustrate, the Products contain 0 grams of dietary fiber, a key disease-preventing and health-promoting component of real fruit. And the Products only contain vitamins by virtue of illegal fortification—not because of the fruit-like ingredients.

48.     Defendants claim that the Fruit Snacks contain "100% Vitamin C" and "25% Vitamins A & E." This violates FDA's Fortification Policy.[23] FDA prohibits fortification of "sugars[] or snack foods" that "could result in deceptive or misleading claims for certain foods."[24]

49.     If Defendants had not illegally fortified the Fruit Snacks with vitamins A, C, and E,[25] they could not claim that these sugary snacks were a nutritious, vitamin-rich food.

50.     In addition, Defendants' marketing and labeling deceive Plaintiff and other reasonable consumers and cause them to believe that these vitamins are present in the Fruit Snacks due to the Products' fruit content. Unfortunately for consumers, the synthetic vitamins Defendants add to the Fruit Snacks do not provide the same health benefits as vitamins obtained by eating fruit.[26] This is one of the reasons that the 2015 Dietary Guidelines recommend obtaining nutrients

---

[23] "The Food and Drug Administration does not encourage indiscriminate addition of nutrients to foods, nor does it consider it appropriate to fortify . . . sugars; or snack foods such as candies . . . ." 21 C.F.R. § 104.20(a).

[24] *Id.*

[25] The Berries 'n Cherries ingredients list includes "ascorbic acid (vitamin C), alpha tocopherol acetate (vitamin E), vitamin A palmitate."

[26] *See, e.g.*, Rui Hai Liu, *Health Benefits of Fruits and Vegetables are from Additive and Synergistic Combinations of Phytochemicals*, 78 Am. J. Clin. Nutr. 517S, 517S–520S, at 518S (2003); Inst. of Medicine, Food and Nutrition Board, Dietary Reference Intakes for Vitamin C, Vitamin E, Selenium, and Carotenoids, Nat'l Academy Press (2000).

from food and not vitamins, and advocate "achieving healthy dietary patterns through healthy food and beverage choices rather than with nutrient or dietary supplements except as needed."[27]

51.     In short, vitamins are illegally added to the Products, fruit is not their first ingredient, and the minimal fruit-like ingredients in the Products bear very little resemblance to "real fruit."

52.     Sugar, however, constitutes more than one third of each Fruit Snacks pouch.[28]

53.     Despite the limited ingredients derived from actual fruit, Defendants market the Fruit Snacks as though they do contain the named and depicted fruit in substantial amounts.

54.     The practice of deceptively marketing fruit snacks as containing substantial amounts of fruit when they do not is well-recognized, and the Center for Science in the Public Interest has been outspoken in its criticism:

> Food companies aggressively market phony fruit snacks to toddlers, children, and their parents, pushing them as healthy options and substitutes for real fruit. Unfortunately for parents and kids, phony fruit snacks don't always contain the fruits advertised on the front of the box and never in the quantities suggested. Instead, companies use relatively cheap, nutritionally void, and highly processed pear, apple, and white grape juices, making phony fruit snacks much closer to gummy bears than actual fruit.
> . . .
>
> The Dietary Guidelines Advisory Committee concluded that "nutrient intake should come primarily from foods" and that "the more scientists learn about nutrition and the human body, the more they realize the importance of eating foods in their most intact forms without added solid fats, sugars, starches, or sodium." Another good reason to stay away from phony fruit snacks, which are mainly sugar and small amounts of fruit that has been dehydrated, pureed, concentrated, heated, and otherwise processed until it is shelf stable and largely unrecognizable, requiring colors, flavors, and vitamins to be added back in.[29]

---

[27]   *Available at* http://www.health.gov/dietaryguidelines/2015-scientific-report/PDFs/04-Integration.pdf.

[28] The Nutrition Facts of the Berries 'n Cherries Fruit Snacks indicate that each 30 g serving contains 90 calories and 12 grams of sugar. *See* Illustration 4.

[29] CSPI website, Nutrition Policy, Fruit Fraud, http://cspinet.org/nutritionpolicy/fruitfraud.html (last visited Mar. 23, 2017).

55.     Defendants also seek to market their Fruit Snacks as a healthier, less candy-like alternative to competing products in the fruit snacks category, by emphasizing the purported fruit content and by consciously avoiding the promotional tie-ins with children's cartoon characters that are common among their competitors. Rather than marketing to children, Defendants market to parents trying to feed their children healthy, fruit-based snacks.

56.     Defendants are able to sell the Fruit Snacks to consumers by deceiving consumers about the healthfulness and content of the Fruit Snacks and distinguishing the Fruit Snacks from competitors' products. Defendants are motivated to deceive consumers for no other reason than to take away market share from competing companies to further increase their own profits.

57.     In short, Defendant's Fruit Snacks are promoted as a healthful snack alternative for parents to purchase for their kids. Defendants convey to parents that their Fruit Snacks are a healthful snack product, when in fact the Fruit Snacks contain added sugars and artificial colors, lack significant amounts of real fruit, contain no dietary fiber, and contain a significant amount of vitamins only due to improper fortification. Thus, stating that the Fruit Snacks are "wholesome," "Made With REAL Fruit," and representing that they are beneficial to consumers' health is misleading and deceptive.

## C.     The Fruit Snacks are Misbranded

58.     Under FDCA section 403, a food is "misbranded" if "its labeling is false or misleading." *See* 21 U.S.C. §§ 343(a).

59.     The amount of fruit in the Fruit Snacks has a material bearing on price and consumer acceptance. Moreover, Defendants' marketing and labeling of the Fruit Snacks—including the imagery of certain fruits—creates the erroneous impression that the fruit depicted in the Products' marketing and labeling is present in an amount greater than is actually the case. Thus, Defendants are required to display the true percentage of fruits in the product name on the front label, pursuant to 21 C.F.R. § 102.5. Defendants violate this requirement.

60.     Because the Defendants fail to reveal the basic nature and characterizing properties of the Fruit Snacks (specifically, the true fruit content), Defendants' Fruit Snacks are not only sold with misleading labeling but are also misbranded under Section 403(a) of the Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 343(a), and cannot be legally manufactured, advertised, distributed, or sold in the U.S. as they are currently labeled. *See* 21 U.S.C. § 331.

61.     By misrepresenting the basic nature and characterizing properties of the Fruit Snacks, Defendants violate these federal and state regulations and mislead Plaintiff and consumers alike.

## CLASS ALLEGATIONS

62.     Plaintiff brings this action as a statewide class action pursuant to R. 4:32 on behalf of all citizens of New Jersey who purchased Defendants' Products in New Jersey during the Class Period (the "Class"). Excluded from the Class are officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors, or assigns, and any entity in which they have or have had a controlling interest.

63.     At this time, Plaintiff does not know the exact number of Class members, but— given the nature of the claims and the number of retail stores selling Defendants' Products— Plaintiff believes that Class members are so numerous that joinder of all members of the Class is impracticable.

64.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

          a)   Whether Defendants marketed, packaged, or sold the Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or

representations, including statements or representations concerning the nutritional and health qualities of its Products;

b) Whether Defendants omitted or misrepresented material facts in connection with the sales of its Products;

c) Whether Defendants participated in and pursued the common course of conduct complained of herein;

d) Whether Defendants' marketing, labeling, or selling of the Products as healthful and nutritious constitutes an unfair or deceptive consumer sales practice;

e) Whether Defendants have been unjustly enriched as a result of their unlawful business practices;

f) Whether Defendants' actions as described above violate the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*;

g) Whether Defendants' actions as described above violate the New Jersey Truth in Consumer Contract, Warrant and Notice Act, N.J.S.A. 56:12-14 through 18;

h) Whether Defendants' actions as described above constitute a breach of express or implied warranties;

i) Whether Defendants should be enjoined from continuing the above-described practices;

j) Whether Plaintiff and members of the Class are entitled to declaratory relief; and

k) Whether Defendants should be required to make restitution, disgorge profits, reimburse losses, pay damages, and pay treble damages as a result of the above-described practices.

65.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, is a citizen of New Jersey and purchased Defendants' Products in a typical consumer setting and sustained damages from Defendants' wrongful conduct.

66.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class.

67.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

68.     The prerequisites to maintaining a class action for injunctive or equitable relief are met because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

69.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class even though certain Class members might not be parties to such actions.

70.     Defendants' conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Breach of Express Warranty

71.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

72.     Defendants expressly warrant in their marketing, labeling, and promotion of the

Fruit Snacks that the Fruit Snacks are "Made With REAL Fruit," nutritious, healthful to consume, and contain fruit as their "1st Ingredient!". These statements are untrue and/or deceptive as detailed above. These promises of fruit content specifically relate to the goods being purchased and became the basis of the bargain.

73.     Plaintiff and members of the Class purchased the Fruit Snacks based upon the above-described express warranties made in Defendants' marketing and labeling of the Fruit Snacks. Defendants breached their express warranty by selling Fruit Snacks that did not conform to the warranties they made.

74.     Plaintiff and the Class were injured as a direct and proximate result of Defendants' breach and deserve to be compensated for the damages they suffered. If Plaintiff and the Class Members had known the true facts concerning the fruit content of the Fruit Snacks, they would not have purchased the Fruit Snacks.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability, N.J.S.A. 12A:2-212**

75.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

76.     Under New Jersey law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.J. Rev. Stat. § 12A:2-314. To be merchantable, a good must be "fit for the ordinary purposes for which such goods are used." *Id.*

77.     Plaintiff and the Class relied on Defendants' knowledge, judgment, and experience in the sale, manufacturing, and marketing of fruit products when they elected to purchase the Fruit Snacks, which Defendants marketed as "Made With REAL Fruit," nutritious, and healthful to consume.

78.     Defendants knew that Plaintiff and the Class relied on their knowledge, judgment, and experience in the sale, manufacture, and marketing of fruit products.

79.     Defendants' Fruit Snacks were not fit for the ordinary purposes for which they were purchased and used because the Fruit Snacks are essentially candy—containing added sugars and no significant amount of real fruit or dietary fiber, and containing vitamins A, C & E only due to

improper fortification.

80.    Accordingly, Defendants are in breach of the implied warranty.

81.    Thus, on behalf of herself and the Class, Plaintiff seeks to recover damages between the actual value of the Fruit Snacks and the product as it would have been if it was fit for its ordinary purpose, in an exact amount to be determined at trial, and all other damages and remedies, including consequential and incidental damages, as permitted by New Jersey law, including N.J.S.A. 12A:2-701-25.

## THIRD CAUSE OF ACTION
## Common Law Fraud Under New Jersey Law

82.    Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

83.    Defendants made numerous material misrepresentations to Plaintiff and Class Members concerning the nutritious and healthful benefits of their Fruit Snacks, including that they were "Made With REAL Fruit."

84.    The representations made by Defendants were false. At the time they were made, Defendants knew they were false.

85.    Despite knowing the falsity of these statements, Defendants made them in an effort to induce Plaintiff and other Class Members to purchase their Fruit Snacks.

86.    At the time Defendants made these misrepresentations, Plaintiff and other Class Members were ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on those representations, Plaintiff and other Class Members were induced to and did purchase Fruit Snacks. Had Plaintiff and other Class Members known the actual facts, Plaintiff and other Class Members would not have purchased the Fruit Snacks, or, would not have paid as much for the Fruit Snacks.

87.    As a direct and proximate result of Defendants' fraud, Plaintiff and the Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment

88.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

89.     Plaintiff and Class Members conferred benefits on Defendants by purchasing the Fruit Snacks.

90.     Defendants have knowledge of such benefits.

91.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Fruit Snacks. Retention of those moneys under these circumstances is unjust and inequitable because Defendants falsely and misleadingly represent that the Fruit Snacks contain significant amounts of the actual fruits shown in the marketing and on the labeling of the Products, are nutritious and healthful to consume, and are more healthful than similar products when, in fact, the Fruit Snacks contain added sugars, lack significant amounts of real fruit, contain virtually no dietary fiber, and only contain a significant amount of vitamins due to improper fortification.

92.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class Members for their unjust enrichment, as ordered by the Court.

## FIFTH CAUSE OF ACTION
### Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*

93.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

94.     Plaintiff brings this cause of action individually and on behalf of the Class pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. (the "CFA"). Plaintiff seeks damages in accordance with the CFA.

95.     Defendants marketed, labeled, and sold Fruit Snacks that Defendants knowingly, falsely, and misleadingly represent contain significant amounts of the actual fruits shown in the marketing and on the labeling of the Products, are nutritious and healthful to consume, and are more healthful than similar products when, in fact, the Fruit Snacks contain added sugars, lack significant amounts of real fruit, contain virtually no dietary fiber, and only contain a significant

amount of vitamins due to improper fortification.

96.    As a result of Defendants' deceptions and misrepresentations, Plaintiff and the Class elected to purchase and consume the Fruit Snacks, relying on Defendants' material representations when they purchase the Fruit Snacks—believing that the Fruit Snacks are healthful and made with significant amounts of the fruits depicted in the marketing and labeling of the Fruit Snacks.

97.    The CFA prohibits the "use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise and misrepresentation . . . in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, . . . ." N.J. Rev. Stat. § 56:8-2.

98.    As described, Defendants have engaged in unconscionable commercial practices, deceptive and fraudulent acts, and misrepresentations in the marketing, labeling, and sale of Fruit Snacks in the State of New Jersey to Plaintiff and the Class. Any reasonable person would have relied on Defendants' representations, and, in fact, Plaintiff and Class Members purchased the Fruit Snacks based on their belief that they were more healthful and made with significant amounts of fruits.

99.    The CFA allows "[a]ny person who suffers an ascertainable loss of moneys . . . as a result of the use or employment by another person any method, act, or practice declared unlawful under the [CFA]" to bring an action in any court of competent jurisdiction. N.J. Rev. Stat. § 56:8-19.

100.    Plaintiff and Class Members are persons within the meaning of the CFA. *See* N.J.S.A. § 56:8-1(d).

101.    Plaintiff and Class Members have suffered an ascertainable loss of money because of Defendants' unlawful methods, acts, and practices. Thus, the CFA entitles Plaintiff and Class Members to actual damages, treble damages, an award of reasonable attorneys' fees, filing fees, and reasonable costs. N.J.S.A § 56:8-19.

102.    Accordingly, Plaintiff, on behalf of herself and the Class, seeks judgment against Defendants for actual damages, treble damages, reasonable attorneys' fees, injunctive and

declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## SIXTH CAUSE OF ACTION
### Violation of The Truth In Consumer Contract, Warranty And Notice Act, N.J.S.A. 56:12-14, *et seq.*

103.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

104.     Plaintiff brings this cause of action individually and on behalf of the Class.

105.     Plaintiff and Class Members are "consumers" within the meaning of N.J.S.A. 56:12-15 and 16.

106.     Defendants are "sellers" with the meaning of N.J.S.A. 56:12-15 and 16.

107.     The labeling and marketing of the Fruit Snacks is both a consumer "notice" and "warranty" within the meaning of N.J.S.A. 56:12-15 and 16.

108.     By the acts alleged herein, Defendants have violated N.J.S.A. 56:12-16 because, in the course of Defendants' business, Defendants have offered written consumer notices and warranties to Plaintiff and the other Class Members which contained provisions which violated their clearly established legal rights under federal law, within the meaning of N.J.S.A. 56:12-15.

109.     Specifically, the clearly established rights of Plaintiff and the other Class Members under federal law include the rights under the FDCA, 21 U.S.C. §§ 331 & 343(a) and 21 C.F.R. § 102.5, which provide that food labels are required to display the true percentage of fruits in the product name on the front label and must reveal the basic nature and characterizing of the food product, and that if its labeling is false or misleading, the product shall be deemed "misbranded" under section 403 of the FDCA.

110.     The purpose of the FDCA and its implementing regulations was to prohibit the mislabeling of products in the manner which occurred here.

111.    Moreover, the clearly established rights of Plaintiff and the other Class Members under state law include the right not to be subjected to false written affirmative statements of fact in the sale of goods, as prohibited by N.J.S.A. 56:8-2

112.    Pursuant to N.J.S.A. 56:12-16, this class Complaint seeks a statutory penalty of $100 for each Class Member, as well as actual damages and attorney's fees and costs.

### SEVENTH CAUSE OF ACTION
### Injunctive And Declaratory Relief Under the New Jersey Declaratory Judgments Act, N.J.S.A. 2A:16-51, *et seq.*

113.    Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

114.    Plaintiff brings this cause of action individually and on behalf of the Class.

115.    Plaintiff and the Class Members are entitled to a declaration that Defendants' representations that the Fruit Snacks are "Made With REAL Fruit," nutritious, and healthful to consume, is inaccurate and misleading.

116.    Plaintiff and each Class Member have a significant interest in this matter.

117.    A justifiable controversy is presented in this case, rendering declaratory judgment appropriate.

118.    In addition, because the unlawful uniform conduct of Defendants continues, and is on-going, Plaintiff and each Class Member are also entitled to an order enjoining Defendants from selling Fruit Snacks with the erroneous label in New Jersey and requiring Defendants to notify customers of the inaccuracies of the label and marketing.

### PRAYER FOR RELIEF

Plaintiff, on her own behalf and on behalf of the Class, prays for the following relief:

A.    For an order certifying the proposed Class and naming Plaintiff as Class Representative and her attorneys as Class Counsel;

B.      For an order declaring that Defendants' conduct violates the statutes referenced herein;

C.      For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.      For an order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For declaratory and injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class hereby demand a trial by jury of all issues so triable.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of the complaint will be mailed to the Attorney General of the State of New Jersey within ten days after the filing with the Court, pursuant to *N.J.S.A.* 56:8-20.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Joshua S. Bauchner, Esq. is hereby designated as trial counsel for Plaintiff in the above matter.

**Remainder of page intentionally blank**

CLASS ACTION COMPLAINT

## CERTIFICATION

Pursuant to <u>Rule</u> 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding.  I further certify that I know of no other party who should be joined in the action at this time.

Dated: June 26, 2017

**ANSELL GRIMM & AARON, P.C.**

Joshua S. Bauchner
jb@ansellgrimm.com
Michael H. Ansell
mha@ansellgrimm.com
365 Rifle Camp Road
Woodland Park, New Jersey 07424
(973) 247-9000 (t)
(973) 247-9199 (f)

**RICHMAN LAW GROUP**
Kim E. Richman (*Pro Hac Vice* forthcoming)
krichman@richmanlawgroup.com
Jaimie Mak (SBN 236505)
jmak@richmanlawgroup.com
535 Mission Street
San Francisco, CA 94105
(415) 259-5688 (t)
(718) 228-8522 (f)

*Attorneys for Plaintiff and the Proposed Class*
