# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

.................................................................

LAUREN HALL, on behalf of herself and
others similarly situated,

        No. 18-cv-10500-AET-LHG

          Plaintiff,

   v.

WELCH FOODS, INC., A COOPERATIVE
and THE PROMOTION IN MOTION
COMPANIES, INC.,

          Defendants.

.................................................................

## OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION PURSUANT TO FED R. CIV. P. 23 AND FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

On the Brief:
  Joshua S. Bauchner, Esq.
  Kim Richman, Esq.
  Michael H Ansell, Esq.
  Clark Binkley, Esq.

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES…………………………………………. iii

PRELIMINARY STATEMENT………………………………… 1

STATEMENT OF FACTS…………………………………….. 4

STANDARD OF REVIEW…………………………………….. 8

    1.    Standard For Summary Judgment………………………….. 8

    2.    Standard For Class Certification…………………………… 9

ARGUMENT………………………………………………………… 10

I.    The Fruit Snacks' Labeling And Marketing Contain False And Misleading Information In Violation Of The New Jersey Consumer Fraud Act (Count V)…………………………………….. 10

    A. Defendants' Use Of False And Misleading Labels And Marketing Materials Constitutes Unlawful Conduct………….. 12

        i.    The Nutrition Claims Regarding The Daily Value Of Vitamins C, A & E Are Misleading………………….. 13

        ii.    The Label Statement "No Preservatives" Is False……. 18

        iii.    The "Fruit as 1st Ingredient" Label Claim Is False And Misleading……………………………………………….. 19

    B. Even If The Labels Contain Statements That Are Technically True, They Are Still Misleading To Plaintiff And The Average Consumer……………………………………………… 21

    C. Plaintiff Has Suffered An Ascertainable Loss As A Result Of Defendants' Unlawful Conduct…………………………… 23

i

II.    The Fruit Snacks' False And Misleading Labelling And Marketing
       Compels Judgment In Favor Of Plaintiff As To Counts I and VI
       Of The First Amended Complaint…………………………………...  25

       A. Breach Of Express Warranty (Count I)………………………..  25

       B. Violation Of The Truth in Consumer Contract, Warranty and
          Notice Act (Count VI)………………………………………… 26

III.   Class Certification Is Warranted Because Plaintiff And The
       Proposed Class Satisfy The Prerequisites Of Rule 23(a) and (b)(2)..27

       A.   The Proposed Class Satisfies The Rule 23(a) Factors………...  27

            i.     The Proposed Class Is Sufficiently Numerous…………  27

            ii.    The Claims Are Common To The Class…………………  28

            iii.   Plaintiff's Claims Are Typical Of Those Of The Class…. 30

            iv.    Plaintiff Will Adequately Represent The Class………… 31

       B.   The Proposed Class Satisfies The Rule 23(b)(2) Requirements. 33

CONCLUSION………………………………………………………………… 36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
   2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 17, 2013)................................30

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)........................................................................................31

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
   568 U.S. 455 (2013)....................................................................................9, 30

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................... 8-9

*Barden v. Hurd Millwork Co.*,
   249 F.R.D. 316 (E.D. Wis. 2008) ....................................................................30

*Barr v. Harrah's Entm't, Inc.*,
   242 F.R.D. 287 (D.N.J. 2008).........................................................................30

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..........................................................................................8

*In re ConAgra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015) ...............................................................30

*Consolidated Rail Corp. v. Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ..............................................................................27

*Cox v. Sears Roebuck & Co.*,
   647 A.2d 454 (1994).........................................................................................22

*D'Agostino v. Maldonado*,
   216 N.J. 168 (2013) .........................................................................................11

*Daaleman v. Elizabethtown Gas Co.*,
   390 A.2d 566 (1978).........................................................................................10

*DeMaria v. Horizon Healthcare Servs., Inc.*,
   2015 U.S. Dist. LEXIS 70176 (D.N.J. June 1, 2015).......................................27

*Elias v. Ungar's Food Products, Inc.*,
   252 F.R.D. 233 (D.N.J. 2008)...........................................................................23

*Furst v. Einstein Moomjy, Inc.*,
   182 N.J. 1, 860 A.2d 435 (2004) .....................................................................23

*Gelb v. American Tel. & Tel. Co.*,
   150 F.R.D. 76 (S.D.N.Y. 1993) ........................................................................34

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968) .............................................................................30

*Gulf Oil Co. v. Barnard*,
   452 U.S. 89 (1981)............................................................................................27

*International Union of Operating Engineers Local No. 68 Welfare*
   *Fund v. Merck & Co.*,
   929 A.2d 1076 (2007).......................................................................................11

*Laufer v. U.S. Life Ins. Co.*,
   385 N.J. Super. 172 (App. Div. 2006).........................................................12, 34

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) .............................................................................28

*In re Mercedes-Benz Tele Aid Contract Litig.*,
   267 F.R.D. 113 (D.N.J. 2010)...........................................................................29

*Miller v. American Family Publishers*,
   663 A.2d 643 (Ch. Div. 1995) .....................................................................21, 23

*Mladenov v. Wegmans Food Markets, Inc.*,
   124 F. Supp. 3d 360 (D.N.J. 2015)...................................................................26

*In re Nassau County Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006) .............................................................................27

*Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) .................................................................................31

*New Directions Treatment Servs. v. City of Reading*,
   490 F.3d 293 (3d Cir. 2007) .............................................................................31

*O'Keefe v. Mercedes-Benz USA, LLC,*
   214 F.R.D. 266 (E.D. Pa. 2003) ........................................................................29

*Reyes v. Netdeposit,*
   802 F.3d 469 (3d Cir. 2015) ........................................................................9, 28

*In re Scotts EZ Seed Litig.,*
   304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................... 29-30

*Smajlaj v. Campbell Soup Co.,*
   782 F. Supp. 2d 84 (D.N.J. 2011) ...............................................................*passim*

*Stewart v. Abraham,*
   275 F.3d 220 (3d Cir. 2001) ........................................................................27

*Sullivan v. DB Invs., Inc.,*
   667 F.3d 273 (3d Cir. 2011) ........................................................................29

*Thiedemann v. Mercedes-Benz USA, LLC,*
   872 A.2d 783 (2005) ............................................................................11, 23

*Union Ink Co., Inc. v. AT & T Corp.,*
   801 A.2d 361 (App. Div. 2002) .................................................................21, 23

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ............................................................................28, 33

*Watkins v. DineEquity, Inc.,*
   591 Fed. Appx. 132 (3d Cir. 2014) ..............................................................26

*Weinberg v. Sprint Corp.,*
   173 N.J. 233 (2002) ........................................................................ 11-12, 34

*Wharton v. Danberg,*
   854 F.3d 234 (3d Cir. 2017) ..........................................................................9

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.,*
   722 F.3d 838 (6th Cir. 2013) ........................................................................28

## Statutes

28 U.S.C. App., p. 144 ....................................................................................9

Consumer Fraud Act, N.J.S.A § 56:8–2 ........................................................*passim*

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301, *et seq.* .........................12

Truth in Consumer Contract, Warranty and Notice Act ................................1, 26, 32

**Other Authorities**

21 C.F.R. § 101.4 .............................................................................. 2, 19-20

21 C.F.R. §§ 101.13-101.14, 101.54-101.83 .........................................12

21 C.F.R. § 101.14(e)(6) .......................................................... 12-14, 17

21 C.F.R. § 101.22 ...................................................................18, 20

21 C.F.R. § 101.65 ...................................................................13, 17

21 C.F.R. § 102.5(a) ...............................................................19

21 C.F.R. § 104.20 .......................................................... 13-17

21 C.F.R. § 170.3(n)(3) ...........................................................16

Fed. R. Civ. P. 23 ...........................................................*passim*

Fed. R. Civ. P. 56 .............................................................1, 8

Local Rule 56.1 ...................................................................4

Plaintiff Lauren Hall, on behalf of herself and others similarly situated ("Plaintiff"), respectfully submits this memorandum of law in support of her Motion for Class Certification pursuant to Fed. R. Civ. P. 23 and for Summary Judgment pursuant to Fed. R. Civ. P. 56 against Defendants, Welch Foods, Inc., a Cooperative ("Welch's"), and The Promotion In Motion Companies, Inc. ("PIM") (collectively, "Defendants").

## PRELIMINARY STATEMENT

This simple action boils down to three (3) distinct false and misleading representations made by Defendants regarding their Welch's Fruit Snacks product line. These misrepresentations are in violation of numerous regulations promulgated by the federal Food and Drug Administration ("FDA"), conclusively establishing that Defendants' representations are unlawful, false, and misleading in violation of the New Jersey Consumer Fraud Act ("CFA"), the Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA"), and in breach of the express and implied warranties. These undisputable violations and breaches compel granting summary judgment in favor of Plaintiff, individually and on behalf of others similarly situated, and enjoining Defendants from continuing to engage in such unlawful conduct on a class-wide basis.

*First*, Defendants fortify the Fruit Snacks with Vitamins A, C, and E in order to claim that they contain "100% Vitamin C," "25% Vitamins A & E" in violation

1

of FDA regulations governing product fortification. Defendants' unlawful fortification of the Fruit Snacks, together with the nutrient claims on the label based on the fortification, mislead the public into believing that the Fruit Snacks are more healthful and nutrient rich than they actually are. This is exactly the type of claim the FDA sought to prevent through its anti-fortification policy.

*Second*, in order to fortify the Fruit Snacks, Defendants use "Ascorbic Acid (Vitamin C), Alpha Tocopherol Acetate (Vitamin E), Vitamin A Palmitate." These ingredients are ***preservatives***, yet Defendants falsely claim on the label that the Fruit Snacks contain "No Preservatives." In fact, Defendants do not even know "the percentages of Vitamins A, C, and E derived from the fruit ingredients versus vitamin enrichment." Thus, Defendants label claim is false and misleading for this reason as well as even they are unable to discern what percentage of vitamins are naturally occurring as a required by law.

*Third*, Defendants' use of "Juice from Concentrate" and later "Fruit Puree" as a ***purported single, isolated*** ingredient misleads the public into believing that fruit is more prevalent in the Fruit Snacks and violates FDA regulations prohibiting the use of a "collective (generic) name." 21 C.F.R. § 101.4(b). In doing so, Defendants impermissible rely on "fruit puree," which in and of itself is ***not*** an "ingredient" under FDA regulations, to falsely claim on the Fruit Snacks label that "Fruit is our 1st Ingredient!" Defendants also do not even know the percentage of the individual

fruit concentrates that constitute the "fruit puree" further undermining their claim (*i.e.*, in other words, if each fruit component in the fruit puree were individually listed, fruit would ***not*** be the first ingredient.)

Certification of the class is also warranted. The representations on the label are the same for all purchasers, and Plaintiff is a typical purchaser capable of representing the class. Accordingly, Plaintiff moves to certify the following class (the "Class"):

- All persons who purchased the Fruit Snacks (as defined below) in New Jersey during the applicable limitations period.

Injunctive relief from consumer deception based on uniform labels, such as Plaintiff requests, is well suited for class certification, and courts within this Circuit and across the country routinely certify classes for similar claims. Plaintiff therefore respectfully requests that this Court certify the proposed Class pursuant to Fed. R. Civ. P. 23(b)(2), appoint Plaintiff as Class Representative, and appoint Plaintiff's counsel as Class Counsel pursuant to Fed. R. Civ. P. 23(g)(1).

These indisputable violations of FDA regulations compel summary judgment in favor of Plaintiff. And, as these claims are common to the class (the misleading product claims are the same for all purchasers), and as Plaintiff is a typical purchaser capable of representing the class, certification is warranted as well.

## STATEMENT OF FACTS

PIM is a prominent maker of fruit snacks, fruit rolls, and private label confections and food products, with both domestic and international operations.  In addition to the Welch's Fruit Snacks, PIM's other proprietary or licensed brands include SUN MAID® Milk Chocolate Raisins, FISHER® Milk Chocolate Peanuts, SOUR JACKS® Sour Candies, NUCLEAR SQWORMS® Sour Neon Gummi Worms, BUDDY BEARS® and ORIGINAL GUMMY FACTORY® Gummi Candies, and TOGGI® Fine Chocolate Wafers.  *See* Statement of Facts pursuant to Local Rule 56.1, dated January 25, 2019 ("SOF"), at ¶ 1.

PIM licenses the trademarked name "Welch's" for use with Mixed Fruit Snacks, Island Fruits Fruit Snacks, Reduced Sugar Mixed Fruit Snacks, Berries 'n Cherries Fruit Snacks, Concord Grape Fruit Snacks, White Grape Raspberry Fruit Snacks, Strawberry Fruit Snacks, Tangy Fruits Fruit Snacks, Fruit Punch Fruit Snacks, White Grape Peach Fruit Snacks, Apple Orchard Medley Fruit Snacks, Strawberry Fruit 'n Yogurt Snacks, Blueberry Fruit 'n Yogurt Snacks, Strawberry Creamy PB&J Fruit Snacks, Strawberry Crunchy PB&J Fruit Snacks, Grape Creamy PB&J Fruit Snacks, Grape Crunchy PB&J Fruit Snacks, Strawberry Fruit Rolls, Berry Fruit Rolls, and Tropical Punch Fruit Rolls (collectively, the "Fruit Snacks"). *See* SOF at ¶ 2.

In a May 19, 2009 press release announcing the launch of the Island Fruits product line, Michael Rosenberg, President and CEO of Promotion in Motion ("Rosenberg"), claimed:

> Like all Welch's® Fruit Snacks, new Island Fruits is made with Real Fruit and Fruit Juices . . . . It's ***a better alternative to lots of other snacks*** as it also contains 100% of the daily value of Vitamin C, 25% of the daily value of Vitamins A and E and is fat free. We find that Mom is putting one pack of Welch's® Fruit Snacks *Island Fruits* in her kid's lunchbox -- and keeping one pack for herself.

*See* SOF at ¶ 3.  Rosenberg also stated:  "When I looked at the fruit snacks segment, all I saw were cartoon-licensed fruit snacks . . . I believed there was an opportunity for a slightly healthier fruit snack that could be targeted towards both moms and schools."  *See* SOF at ¶ 4.

Plaintiff started purchasing the Fruit Snacks in approximately 2009 or 2010, and continued to purchase the Fruit Snack packages about once a week for approximately seven years.  *See* SOF at ¶ 5.  Plaintiff purchased the Fruit Snacks because of the label that read, "Made with Real Fruit," "vitamins," and "no preservatives."  *See* SOF at ¶ 6.  Based on these representations, Plaintiff continued to purchase the Fruit Snacks because she thought they were a "better alternative to other fruit snacks" and a "healthier alternative."  *See* SOF at ¶ 7.  Had Plaintiff known that the representations by Defendants were false and misleading, she would not have purchased the Fruit Snacks.  *See* SOF at ¶ 8.

5

Defendants' Fruit Snacks' labels state that, "In this tradition of **wholesome** goodness come Welchs® Fruit Snacks, made with real fruit and fruit juices." *See* SOF at ¶ 9. Defendants' Fruit Snacks' labels state that they are "Made with Real Fruit," "Fruit is our 1st Ingredient," and "We put the fruit in fruit snacks." *See* SOF at ¶ 10. Defendants' Fruit Snacks' labels contain images of certain fruit. For example, the Berries 'n Cherries Fruit Snacks contains pictures of strawberries, blueberries, raspberries, and cherries. *See* SOF at ¶ 11.

Defendants' Fruit Snacks' labels state that they contain "100% Vitamin C" and "25% Vitamins A & E." *See* SOF at ¶ 12. Defendants' Fruit Snacks' labels state that they contain "No Preservatives." *See* SOF at ¶ 13. Defendants' Fruit Snacks' labels identify the following ingredients: "Ascorbic Acid (Vitamin C), Alpha Tocopherol Acetate (Vitamin E), Vitamin A Palmitate." *See* SOF at ¶ 14. The source of the Vitamin A in the Fruit Snacks is the "Vitamin A Palmitate" ingredient. *See* SOF at ¶ 15. The source of Vitamin C in the Fruit Snacks is the "Ascorbic Acid" ingredient. *See* SOF at ¶ 16. The source of Vitamin E in the Fruit Snacks is the "Alpha Tocopherol Acetate" ingredient. *See* SOF at ¶ 17.

███████████████████████████████████████████████

███████████████████████████████████████████████

████████. *See* SOF at ¶ 18. Defendants do not have information or knowledge regarding "the percentages of Vitamins A, C, and E derived from the fruit ingredients

versus vitamin enrichment." *See* SOF at ¶ 19. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ *See* SOF at ¶ 20.

Following reformulation of the Fruit Snacks in or around 2015, Defendants' Fruit Snacks' labels list "fruit puree" as the first ingredient and claim that "Fruit is our 1ˢᵗ ingredient!" *See* SOF at ¶ 21. Defendants have no knowledge or information regarding the percentage of each sub-ingredient used in the "Juice from Concentrates" ingredient utilized in each Fruit Snacks product prior to the reformulation in or around 2015. *See* SOF at ¶ 22. Defendants have no knowledge or information regarding the percentage of each sub-ingredient used in the "Fruit Purees" ingredient utilized in each Fruit Snacks product prior to the reformulation in or around 2015. *See* SOF at ¶ 23. Defendants also have no knowledge or information regarding the percentage of each sub-ingredient used in the "Fruit Puree" ingredient utilized in each Fruit Snacks product subsequent to the reformulation in or around 2015. *See* SOF at ¶ 24. However, the Fruit Snacks contain 0 grams of dietary fiber. *See* SOF at ¶ 25.

## STANDARD OF REVIEW

1.    **Standard For Summary Judgment.**

Pursuant to Fed. R. Civ. P. 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 265 (1986).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. The moving party's burden may be discharged by convincing the District Court that no evidence exists to support the non-moving party's case. *Id.* at 325; *Anderson*, 477 U.S. at 249.  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 *U.S.* at 325.  To survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party

will bear the burden of proof at trial." *Id.* at 322.  In deciding the merits of a party's

motion for summary judgment, the Court's role is not to evaluate the evidence and

decide the truth of the matter, but to determine whether there is a genuine issue for

trial. *Anderson*, 477 U.S. at 249.

## 2.    <u>Standard For Class Certification.</u>

In order for a class action to be certified, the movant must satisfy the four

requirements of Rule 23(a) -- numerosity, commonality, typicality, and adequacy of

representation -- and fall within at least one subsection of Rule 23(b), in this case

23(b)(2).  The question is not whether Plaintiff will prevail on the merits, but

whether, based on the Court's factual and legal determinations, the requirements of

Rule 23 have been established by a preponderance of the evidence.  *See* Fed. R. Civ.

P. 23; *see also Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017); *Reyes v.

Netdeposit*, 802 F.3d 469, 485 (3d Cir. 2015).  "Merits questions may be considered

to the extent—but only to the extent—that they are relevant to determining whether

the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn.

Ret. Plans and Trust Funds*, 568 U.S. 455, 466 (2013).  "[A]n evaluation of the

probable outcome on the merits is not properly part of the certification decision."

*Id.* (citing Advisory Committee's 2003 Note on subd. (c)(1) of Fed. R. Civ. P. 23,

28 U.S.C. App., p. 144).

## **ARGUMENT**

**I.     The Fruit Snacks' Labeling And Marketing Contain False And Misleading Information In Violation Of The New Jersey Consumer Fraud Act (Count V).**

Defendants have engaged in unlawful conduct resulting in an ascertainable loss to Plaintiff and the putative class.  This unlawful conduct includes:  (i) falsely claiming on the label that "Fruit is our 1ˢᵗ Ingredient!;" (ii) fortifying the Fruit Snacks with vitamins to make false nutrient claims; (iii) falsely claiming on the label that the Fruit Snacks contain "No Preservatives;" and (iv) unlawfully listing "Juice from Concentrate" and "Fruit Puree" as the first "ingredient" on the Fruit Snacks' label when they are not actual ingredients under FDA regulations.  Any one of these constitutes a violation of the CFA compelling summary judgment in favor of Plaintiff and the issuance of an injunction prohibiting Defendants' continued unlawful conduct.

"The Consumer Fraud Act, N.J.S.A § 56:8–2, is designed to address 'sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices.'"  *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 97 (D.N.J. 2011) (quoting *Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566, 569 (1978)).  "To state a claim under the Act, Plaintiffs must allege sufficient facts to demonstrate:  (1) unlawful conduct; (2) an

10

ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Id.* (citing *International Union of Operating Engineers Local No. 68 Welfare Fund ("IUOEL 68") v. Merck & Co.*, 929 A.2d 1076, 1086 (2007)). "Unlawful conduct falls into three general categories:  affirmative acts, knowing omissions, and violation of regulations promulgated under the Act." *Id.* at 98 (citing N.J.S.A. §§ 56:8–2, 56:8–4).  "The Act is 'remedial legislation which should be construed liberally.'" *Id.* (quoting *IUOEL 68*, 929 A.2d at 1079 n. 1).

"Affirmative acts" are defined as unlawful practices that include unconscionable commercial practices, fraud, deception, false promise, false pretense, and misrepresentation.  N.J.S.A. 56:8–2.  In respect of such violations, intent is not a required element.  *See* N.J.S.A. 56:8–2.  "An 'affirmative act' may be established by showing that a defendant's actions constituted one of the stated prohibited practices."  *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 790–91 (2005).

Under the CFA, "[t]he treble damages remedy is 'mandatory under N.J.S.A. 56:8-19 if a consumer-fraud plaintiff proves both an unlawful practice under the Act and an ascertainable loss.'"  *D'Agostino v. Maldonado*, 216 N.J. 168, 185 (2013) (internal citation omitted).  "The treble damages and injunctive remedies described in N.J.S.A. 56:8-19 are not mutually exclusive; injunctive relief can be combined with an award of treble damages in an appropriate case."  *Id.* (citing *Weinberg v.*

11

*Sprint Corp.,* 173 N.J. 233, 253 (2002) (noting CFA "allows a private cause of action to proceed for all available remedies, including an injunction, whenever" plaintiff asserts a bona fide CFA claim), and *Laufer v. U.S. Life Ins. Co.,* 385 N.J. Super. 172, 185 (App. Div. 2006) (concluding "by the express terms of [N.J.S.A. 56:8-19], a private plaintiff who establishes a violation of the Consumer Fraud Act may obtain not only monetary relief, including treble damages and attorneys' fees, but also 'equitable relief'")).

> ### A. Defendants' Use Of False And Misleading Labels And Marketing Materials Constitutes Unlawful Conduct.

The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301, *et seq*. ("FDCA"), empowers the FDA to protect the public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." *Id*. § 393(b)(2)(A). The Act prohibits the distribution and sale of misbranded foods. *See Id*. §§ 331(a)-(c), (g), (k). Foods are misbranded when they meet one of the definitions for misbranding under § 343, including where their labels are "false or misleading in any particular," *id*. § 343(a)(1), or where they make nutrient content or health claims -- statements that expressly or by implication characterize the level of a nutrient in a food, or characterize the relationship of any nutrient to a disease or health-related condition -- in violation of the Act and its implementing regulations. *See id*. § 343(r); *see also* 21 C.F.R. §§ 101.13-101.14, 101.54-101.83.

###### i.      The Nutrition Claims Regarding The Daily Value Of Vitamins C, A & E Are Misleading.

The Fruit Snacks violate FDA fortification policy which prohibits "random fortification of foods [which] could result in over- or underfortification in consumer diets and create nutrient imbalances in the food supply" resulting "in deceptive or misleading claims for certain foods."  21 C.F.R. § 104.20.  FDA regulations do not permit a health claim, or any nutrient content claim involving the word "healthy," (or any derivative) to be made about a food unless it contains, in the quantity customarily consumed at one sitting, at least 10 percent of the recommended daily reference quantity of Vitamins A and C, calcium, iron, protein or fiber ("minimum nutrient levels").  *See* 21 C.F.R. § 101.14(e)(6) (health claim); 21 C.F.R. § 101.65(d) (nutrient content claim).

In the case of a claim that a product is "healthy," a manufacturer may fortify the product with nutrients in order to reach the required 10 percent nutrient threshold ***only*** if the addition of nutrients would be consistent with the FDA's fortification policy for foods set forth in 21 C.F.R. § 104.20, which bars the "indiscriminate addition of nutrients to foods."[1]   21 C.F.R. § 101.65(iv).  With regard to health

---

[1]      The FDA Fortification Policy is non-binding, as described above, but is incorporated by reference into binding FDA regulations:

> While it is true that the fortification policy is only a guideline, in the context of new § 101.54(e)(1)(ii), FDA has subjected the use of § 104.20 (21 C.F.R. 104.20) to notice and comment rulemaking.

claims, the food must contain the threshold 10 percent level of nutrients "prior to any nutrient addition." 21 C.F.R. § 101.14(e)(6).  The FDA also does not permit the use of the words "more," "fortified," "enriched," "added," "extra," or "plus" with respect to a product containing added nutrients if the addition violates the fortification policy in Section 104.20.  21 C.F.R. § 101.54(e).

The FDA regulations restricting health claims (or implied claims of "healthiness") to foods which meet certain minimum nutrient levels, colloquially termed "the jelly bean rule," were developed in order to prevent food producers from encouraging the consumption of "junk foods" by fortifying them with nutrients.  As the FDA explained:

> [I]n order to preclude the fortification of foods solely for the purpose of making a claim, the nutrient or nutrients must not be derived from fortification or other additions to the food.  Fortification of a food of little or no nutritional value for the sole purpose of qualifying that food for a health claim is misleading for several reasons.  There is great potential to confuse consumers if foods like sugars, soft drinks, and sweet desserts are fortified to qualify for a health claim when, at the same time, dietary guidance as contained in USDA's Food Guide Pyramid, for example, states that "[T]hese foods provide calories and little else nutritionally.  Most people should use them sparingly." Indiscriminate fortification of such foods with one nutrient would not make such foods consistent with dietary guidelines.  Further, fortifying

_____

Interested persons were given notice that FDA intends to use that provision as more than a guideline. Such persons had an opportunity to object.... No comments did. Therefore, the fact that part 104 (21 CFR part 104) is generally intended to be used as a guideline has no significance here.

58 Fed. Reg. 2302, 2362.

> such foods is not consistent with FDA's fortification policy in § 104.20 that has been in effect for many years.  The fundamental objective of FDA's policy on appropriate fortification of foods is to establish a uniform set of principles that serve as a model for the rational addition of nutrients to foods.  In that policy, FDA clearly states its concern that random fortification of foods could result in deceptive or misleading claims for foods.

Final Rule, *Food Labeling: General Requirements for Health Claims for Food,* 58 Fed. Reg. 2478, 2522 (Jan. 6, 1993) (citations omitted).  *See also Food Labeling: Nutrient Content Claims, General Principles; Health Claims, General Requirements and Other Specific Requirements for Individual Health Claims,* 60 Fed. Reg. 66206, 66212 (proposed Dec. 21, 1995) ("The agency is concerned, however, that eliminating the 10 percent nutrient contribution requirement [would] permit misleading health claims on foods with little or no nutritional value such as candies and soft drinks or will encourage overfortification of the food supply (*e.g.*, vitamin or mineral addition to soft drinks).  The appearance of health claims on such foods would be inconsistent with Congress's intent when it enacted the health claims provisions.").

In particular, the current fortification policy states that "[t]he Food and Drug Administration does not encourage indiscriminate addition of nutrients to foods, nor does it consider it appropriate to fortify fresh produce; meat, poultry, or fish products; sugars; or **snack foods** such as candies and carbonated beverages," and otherwise recommends fortification in only four circumstances:

1. "to correct a dietary insufficiency recognized by the scientific community ..."

2. "to restore such nutrient(s) to a level(s) representative of the food prior to storage, handling and processing ..."

3. "in proportion to the total caloric content ... to balance the vitamin, mineral, and protein content..." and

4. "to avoid nutritional inferiority" when replacing a traditional food.

21 C.F.R. § 104.20(b)-(e) (emphasis added).  "Snack foods" are further defined to include "chips, pretzels, and ***other novelty snacks*****.**"  21 C.F.R. § 170.3(n)(3).

Here, as their name demonstrates, the Fruit Snacks are "snack foods" for which vitamin fortification is prohibited.  By unlawfully fortifying the Fruit Snacks, Defendants then make misleading nutrient claims regarding the daily value of Vitamins A, C, and E.  *See* SOF at ¶ 12.  However, as Defendants admit, Vitamins A, C, and E are derived from "Ascorbic Acid," "Alpha Tocopherol Acetate," and "Alpha Vitamin A Palmitate."  *See* SOF at ¶¶ 15-17.  ███████████████████

████████████████████████████████████████████████████.

*See* SOF at ¶ 18.  Based on the mere fact the Fruit Snacks are just that, snack foods, this fortification is expressly prohibited by the FDA.  *See* 21 C.F.R. § 104.20(a).

However, even if the Fruit Snacks did not qualify as a "snack food," Defendants' vitamin fortification is still unlawful as none of the criteria permitting fortification are applicable.

16

*First*, there is no dietary insufficiency recognized by the scientific community. *See* 21 C.F.R. 104.20(b).

*Second*, ███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████ *See* SOF at ¶ 20.  .

*Third*, the Fruit Snacks are not fortified to contain twenty-one specified nutrients pursuant to 21 C.F.R. § 104.20(d)(3), nor were the vitamins added in specified, uniform quantities determined by reference to the caloric value as Defendants do not even know "the percentages of Vitamins A, C, and E derived from the fruit ingredients versus vitamin enrichment" permitting them to make this determination.

*Fourth*, as a "snack food," Fruit Snacks are not intended to replace a traditional food.  Accordingly, even if vitamin fortification is not strictly prohibited on the basis that Fruit Snacks are a "snack food," Defendants are unable to satisfy the four (4) circumstances under which fortification is permitted pursuant to 21 C.F.R. § 104.20(b)-(e).

Accordingly, Defendants nutrient claims that the Fruit Snacks are "wholesome" and contain "100% Vitamin C" and "25% Vitamins A & E," *see* SOF at ¶¶ 9 and 12, are misleading and prohibited pursuant to 21 C.F.R. §§ 101.14(e)(6) and 101.65(d).

17

## ii.      The Label Statement "No Preservatives" Is False.

Defendants' label claiming that the Fruit Snacks have "No Preservatives" is false and misleading.  The FDA defines "chemical preservative" as "any chemical that, when added to food, tends to prevent or retard deterioration thereof …"  21 C.F.R. § 101.22(a)(5).  The FDA further identifies "ascorbic acid" and "tocopherols" as "chemical preservatives."   *See* 21 C.F.R. §§ 582.3013 and 582.3890.   "A statement of … chemical preservative shall be placed on the food or on its container or wrapper … as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food."  21 C.F.R. § 101.22(c).  Moreover, "[a] food to which a chemical preservative(s) is added shall, except when exempt pursuant to § 101.100 bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., 'preservative', 'to retard spoilage', 'a mold inhibitor', 'to protect flavor' or 'to promote color retention."  21 C.F.R. § 101.22(j).

Here, it is undisputed that:  (i) the Fruit Snacks contain "Ascorbic Acid" and "Alpha Tocopherol Acetate," *see* SOF at ¶ 14; (ii) "Ascorbic Acid" and "Alpha Tocopherol Acetate" are chemical preservatives as defined by the FDA, *see* 21 C.F.R. §§ 582.3013 and 582.3890; and (iii) the ingredient label does not include a separate description of the preservative function of the "Ascorbic Acid" and "Alpha Tocopherol Acetate" as required by the FDA.  *See* 21 C.F.R. § 101.22(j).

18

In fact, Defendants' misconduct goes even further by falsely claiming the Fruit Snacks contain "No Preservatives," when, patently, they do. *See* SOF at ¶ 14. These false and misleading claims by Defendants are intended to mislead consumers into believing that the Fruit Snacks are more natural and healthful than they actually are in violation of the CFA and TCWWNA.

### iii.    The "Fruit as 1st Ingredient" Label Claim Is False And Misleading.

The FDA requires ingredients to be listed in descending order of predominance by weight. *See* 21 C.F.R. § 101.4(a). Each ingredient name "shall be a specific name and not a ***collective (generic) name***." 21 C.F.R. §101.4(b)(emphasis added). The FDA further requires the ingredient name to be the "common or usual name of a food." 21 C.F.R. § 102.5(a). If an ingredient contains sub-ingredients, those sub-ingredients must be designated in the statement of ingredients in one of two ways: "(i) By declaring the established common or usual name of the ingredient followed by a parenthetical listing of all ingredients contained therein in descending order of predominance …;" or "(ii) By incorporating into the statement of ingredients in descending order of predominance in the finished food, the common or usual name of every component of the ingredient without listing the ingredient itself." 21 C.F.R. § 101.4(b)(2)(i)-(ii).

Following reformulation of the Fruit Snacks in or around 2015, Defendants' Fruit Snacks' labels list "fruit puree" as the first, purported ingredient and claim that

"Fruit is our 1st ingredient!"  *See* SOF at ¶ 21.  However, the claim that "Fruit is our 1st ingredient" is false and misleading in violation of FDA regulations.  *First*, the term "fruit puree" is an improper "collective (generic) name."  21 C.F.R. § 101.4(b). "Fruit puree" is not itself an ingredient, but rather a combination of individual fruit purees.  The FDA already expressly prohibits the use of "fruit juice concentrates" as an ingredient, finding that it "is not established as a common or usual name, nor is it established as an appropriate collective name for a variety of different concentrated fruit juices."[2]  Similarly, the FDA provides that:

> Substances obtained by cutting, grinding, drying, pulping, or similar processing of tissues derived from fruit, vegetable, meat, fish, or poultry, e.g., powdered or granulated onions, garlic powder, and celery powder, are commonly understood by consumers to be food rather than flavor and shall be declared by their common or usual name.

21 C.F.R. § 101.22(h)(3).  Thus, a collective term such as "vegetable powder" is not permitted, and each vegetable powder "must be declared by its common or usual name, such as 'celery powder.'"  Food Labeling Guide, *infra*, n.1.

Accordingly, Defendants' use of the term "fruit puree" as an "ingredient" to achieve predominance of fruit is misleading and unlawful.  Each sub-ingredient of the "fruit puree" must be individually listed as the actual ingredient but are not

---

[2]     *See* Declaration of Joshua S. Bauchner, Esq., dated January 25, 2019 ("Bauchner Decl."), at **Exhibit L** at 18 (FDA Guidance for Industry: A Food Labeling Guide (January 2013), available at https://www.fda.gov/downloads/Food/GuidanceRegulation/ GuidanceDocumentsRegulatoryInformation/UCM265446.pdf ("Food Labeling Guide")).

because it would defeat Defendants' "Fruit is our 1st ingredient!" claim.  Indeed, Defendants **admit** that they have no knowledge or information regarding the percentage of each sub-ingredient used in the "Fruit Puree" concentrate subsequent to the reformulation in or around 2015.  *See* SOF at ¶ 24.  Without knowing whether any one of the sub-ingredients would be listed first on the ingredient list based on its predominance by weight, Defendants cannot lawfully claim that "Fruit is our 1st Ingredient!" and in doing so make false and misleading claims in violation of the CFA.

**B.    Even If The Labels Contain Statements That Are Technically True, They Are Still Misleading To Plaintiff And The Average <u>Consumer</u>.**

Although the various claims and statements on the Fruit Snacks labels are unequivocally false as discussed in Section I(A), *supra*, even if such claims were technically true, they are still misleading to Plaintiff and the average consumer regarding the healthfulness of the Fruit Snacks and in violation of the CFA.

Whether "the labels were literally true does not mean they cannot be misleading to the average consumer." *Smajlaj*, 782 F. Supp. 2d at 98 (citing *Miller v. American Family Publishers,* 663 A.2d 643, 648 (Ch. Div. 1995) (upholding claim even though "Defendant [was] correct that a careful, literal reading of the quoted language reveals that the words do not actually say what plaintiffs claim they are intended to convey"); *Union Ink Co., Inc. v. AT & T Corp.,* 801 A.2d 361, 379 (App.

Div. 2002)).   The CFA protects consumers from unfair practices "even when, a merchant acts in good faith."  *Cox v. Sears Roebuck & Co.,* 647 A.2d 454, 461 (1994).

Defendants' Fruit Snacks' labels state that:  "In this tradition of **wholesome** goodness come Welchs® Fruit Snacks, made with real fruit and fruit juices."  *See* SOF at ¶ 9.  Defendants' Fruit Snacks' labels state that they are "Made with Real Fruit," "Fruit is our 1ˢᵗ Ingredient," and "We put the fruit in fruit snacks."  *See* SOF at ¶ 10.  Defendants' Fruit Snacks' labels also state that they contain "100% Vitamin C" and "25% Vitamins A & E" and contain "No Preservatives."  *See* SOF at ¶¶ 12-13.   Although Plaintiff maintains that these representations are false under controlling FDA regulations, *see* Section I(A), *supra*, they are, at the very least, misleading.

Defendants' own statements confirm that the Fruit Snacks are marketed as "***a better alternative to lots of other snacks***."  *See* SOF at ¶ 3.  All of the claims made on the Fruit Snacks labels are intended to mislead the average consumer into believing that Fruit Snacks are wholesome and healthful alternatives to other candies.  However, the Fruit Snacks contain 0 grams of dietary fiber, *see* SOF at ¶ 25, which would be impossible if the Fruit Snacks were truly "Made with Real Fruit."[3]  Although Defendants have illegally fortified the Fruit Snacks with vitamins

---

[3]      *See* Bauchner Decl. at **Exhibit M** (FDA Nutrition Facts Label: Dietary Fiber,

and unlawfully combined ingredients into a single "collective (generic) name" in order to provide some bases for their false claims, these tactics do not shield Defendants from liability for misleading consumers into believing that the Fruit Snacks are "*a better alternative to lots of other snacks*."

C.   **Plaintiff Has Suffered An Ascertainable Loss As A Result Of Defendants' Unlawful Conduct.**

The New Jersey Supreme Court has repeatedly and explicitly endorsed a benefit-of-the-bargain theory under the Consumer Fraud Act requiring nothing more than showing that a consumer was misled into buying a product that was ultimately worth less to the consumer than the product she was promised.  *See Thiedemann,* 872 A.2d at 795 n. 8; *Furst v. Einstein Moomjy, Inc.,* 182 N.J. 1, 860 A.2d 435, 442 (2004).  Although it is often the case that the difference between the promised product and the product actually received is some defect or flaw in the product, there is no requirement that the product actually received be defective or deficient in any way other than that it is not what was promised.  *See Union Ink Co., Inc. v. AT & T Corp.,* 801 A.2d 361, 379 (App. Div. 2002) ("An ascertainable loss occurs when a consumer receives less than what was promised."); *see also Elias v. Ungar's Food Products, Inc.,* 252 F.R.D. 233, 248 (D.N.J. 2008); *Miller v. American Family Publishers,* 663 A.2d 643, 655 (Ch. Div. 1995) ("[T]o satisfy the 'ascertainable loss'

---

available at https://www.accessdata.fda.gov/scripts/interactivenutritionfactslabel/factsheets/Dietary_Fiber.pdf (last visited on Jan. 24, 2019)).

requirement, a plaintiff need prove only that he has purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different from that for which he bargained.").  "If a manufacturer promises a car with all the features of a Formula One racecar and delivers an ordinary minivan, the consumer's fraud claim is not foreclosed by the fact that the minivan runs fine, and many people choose it for its great interior space." *Smajlaj*, 782 F. Supp. 2d at 99.

Here, Plaintiff has testified that she bought the Fruit Snacks because of the false and misleading label claims.  *See* SOF at ¶ 6.  She further testified that she continued to purchase the Fruit Snacks only because she believed they were a "better alternative to other fruit snacks" and a "healthier alternative" based on the false and misleading label claims.  *See* SOF at ¶ 7.  Plaintiff also testified that had she known the representations by Defendants were false and misleading, she would not have purchased the Fruit Snacks.  *See* SOF at ¶ 8.

Moreover, Plaintiff has an expert report from Professor Jean-Pierre H. Dubé detailing the methodology to be used to calculate damages through a survey to establish the decreased value of the Fruit Snacks when the impermissible label claims are removed.  *See* SOF at ¶ 26.  Even Defendants' expert, Michael Buchannan, testified that Professor Dube's methodology would be appropriate in these circumstances if conducted properly.  *See* SOF at ¶¶ 27-31.

24

At this stage, all that is necessary is for Plaintiff to establish that she suffered an ascertainable loss and that the value of such loss is calculable. This Court has held that any calculation of damages shall be addressed following class certification.

Accordingly, Plaintiff has established Defendants' violation of the CFA, compelling summary judgment in her favor, issuance of an injunction against Defendants' further unlawful conduct, and awarding Plaintiff damages in an amount to be determined following further expert damages discovery.

## II.    The Fruit Snacks' False And Misleading Labelling And Marketing Compels Judgment In Favor Of Plaintiff As To Counts I and VI Of The <u>First Amended Complaint</u>.

The violations of the CFA, and the bases for such findings as discussed in Section I, *supra*, support a finding in favor of Plaintiff and against Defendants as to Counts I and VI of Plaintiff's First Amended Complaint.

### A.    <u>Breach Of Express Warranty (Count I)</u>.

A claim for breach of express warranty requires "that (1) Defendant(s) made an affirmation, promise, or description that became part of the basis of the bargain, and (2) the goods ultimately did not conform to the affirmation, promise, or description." *Smajlaj*, 782 F. Supp. 2d at 103 (internal citation omitted). Here, Plaintiff has established that Defendants: (i) falsely claim on the label that "Fruit is our 1st Ingredient!;" (ii) fortify the Fruit Snacks with vitamins to make false nutrient claims; (iii) falsely claim on the label that the Fruit Snacks contain "No

25

Preservatives;" and (iv) impermissibly list "Juice from Concentrate" and "Fruit Puree" as the first ingredient on the Fruit Snacks' label, all in violation of FDA regulations.   As detailed in Section I, *supra*, these false claims are the bases for Plaintiff's purchase of the Fruit Snacks, which ultimately did not conform to these representations.   Accordingly, Plaintiff has established that Defendants breached their express warranties as a matter of law.

> **B.   Violation Of The Truth in Consumer Contract, Warranty and Notice Act (Count VI).**

By violating the CFA through the use of false and misleading statements on the Fruit Snacks labels, Defendants also violate the TCCWNA.   To prevail on a TCCWNA claim, a plaintiff must demonstrate that:  "(1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the 'seller offers a consumer contract' or gives or displays any written notice, or sign; and (4) the contract, notice or sign includes a provision that 'violate[s] any legal right of a consumer' or responsibility of a seller." *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 380 (D.N.J. 2015) (quoting *Watkins v. DineEquity, Inc.,* 591 Fed. Appx. 132, 135 (3d Cir. 2014)).

It is undisputed that Plaintiff is a consumer and that Defendants are sellers of the Fruit Snacks.   As discussed in greater detail in Section I, *supra*, Defendants displayed written statements on the Fruit Snacks label that violated the CFA. Accordingly, a finding of a violation of the CFA also supports a finding of a violation of the TCCWNA.

**III.   Class Certification Is Warranted Because Plaintiff And The Proposed <u>Class Satisfy the Prerequisites of Rule 23(a) and (b)(2).</u>**

The Supreme Court has recognized that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Barnard*, 452 U.S. 89, 99 (1981). Because class actions provide a single forum in which to litigate similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources. *See, e.g.*, *In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006); *DeMaria v. Horizon Healthcare Servs., Inc.*, 2015 U.S. Dist. LEXIS 70176, at *12 (D.N.J. June 1, 2015) (citing cases). Plaintiff's proposed class is cohesive and well-defined by objective criteria:  a Class member is anyone who (i) purchased the Fruit Snacks (ii) within New Jersey (iii) during the Class period. As defined, Plaintiff is within the Class and Plaintiff and the proposed Class meet the prerequisites of Fed. R. Civ. P. 23(a) and 23(b)(2).

**A.   <u>The Proposed Class Satisfies The Rule 23(a) Factors.</u>**

**i.   <u>The Proposed Class Is Sufficiently Numerous</u>**.

Defendants' records show product sales of the Fruit Snacks ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* SOF at ¶ 32. Rule 23(a)'s numerosity requirement is satisfied when "joinder of all members is impracticable." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *see also* Fed. R. Civ. P. 23(a)(1). Numerosity has been satisfied if the proposed class consists as few as forty members. *See Consolidated Rail Corp. v. Hyde Park*, 47 F.3d 473,

483 (2d Cir. 1995).  Therefore, numerosity is easily met.

    **ii.**    **The Claims Are Common To The Class**.

Plaintiff has therefore met the commonality requirement because there are common questions of law and fact with respect to Plaintiff's and the Class members' claims against Defendants.

As the Supreme Court held in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores*, 564 U.S. at 350.  This commonality ***does not*** mean that all class members make identical claims, as the Third Circuit construes the requirement permissively and does not require every question of fact and law to be common among the Class.  *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012); *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) ("Commonality does not require perfect identity of questions of law or fact among all class members").  Indeed, "[e]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement."  *Wal-Mart Stores*, 564 U.S. at 369; *see also In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013) ("We start from the

28

premise that there need be only one common question to certify a class."). Ultimately, a court's focus is "on whether the defendant's conduct [is] common as to all of the class members[]." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 299-300 (3d Cir. 2011).

Here, Defendants' conduct towards members of the Class was widespread and uniform, and there is now a common question among the Class based on that conduct. The answer to this common question -- whether Defendants' labels are false or misleading -- resolves Plaintiff's claims and produces an aggregate judgment. Because a failure of proof on the common questions causes both the Plaintiff's and the Class' claims to fail in unison, predominance of common issues is established. Courts routinely find commonality when claims arise from a uniform misrepresentation. *See, e.g., In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113, 129 (D.N.J. 2010) (commonality satisfied under CFA where liability issue turned on knowledge and actions of defendant); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 288-89 (E.D. Pa. 2003) (finding the "low threshold for commonality" satisfied where plaintiff alleged a number of common questions, including whether express warranties were made and whether express or implied warranties were breached).

Moreover, since materiality is determined by an objective "reasonable consumer" standard, this issue is also common to the class. *See In re Scotts EZ Seed*

*Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) ("[T]he Supreme Court has held materiality 'is a question common to all members of the class when, as here, the materiality of an alleged misrepresentation is judged according to an objective standard.'" (quoting *Amgen*, 568 U.S. at 467)).

### iii.    **Plaintiff's Claims Are Typical Of Those Of The Class.**

Plaintiff's interests align with the Class members' interests as Plaintiff and the proposed Class assert the same claims that arise from the same course of conduct -- namely that Defendants acted deceptively by uniformly labeling the Fruit Snacks with false or misleading representations.

Rule 23(a)(3) requires that Plaintiff's claims be "typical" of the class. Fed. R. Civ. P. 23(a)(3). Rule 23(a)'s typicality requirement is not demanding. *See Barr v. Harrah's Entm't, Inc.*, 242 F.R.D. 287, 292 (D.N.J. 2008) ("the threshold for satisfying the typicality prong is a low one"). Typicality is established where, as here, Plaintiff's claims arise from the same practices or course of conduct (false or misleading advertising) that give rise to the claims of other class members and their claims are based on the same legal theories. *See, e.g.*, *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 973 (C.D. Cal. 2015); *Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, at *42-43 (E.D.N.Y. July 17, 2013); *Barden v. Hurd Millwork Co.*, 249 F.R.D. 316, 319 (E.D. Wis. 2008); *cf. Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968) ("[To deny class certification] because all of the allegations of

the class do not fit together like pieces in a jigsaw puzzle . . . would destroy much of the utility of Rule 23.").

"The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994). Based on these considerations, Plaintiff's claims are indisputably typical of the Class she seeks to represent.

### iv.  Plaintiff Will Adequately Represent The Class.

Plaintiff's interests are wholly aligned with those of the class confirming that she is adequate to represent the interests of the class.  Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.  A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods. v. Windsor*, 521 U.S. 591, 624-25 (1997) (citations omitted)).  In addition to the Plaintiff herself being adequate, adequacy also asks whether plaintiff's attorneys are qualified, experienced, and generally able to conduct the proposed litigation. *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir.

2007).

Here, Plaintiff responded to written discovery requests, produced documents, and sat for a lengthy deposition.  She also demonstrated an understanding of both the bases of the claims and the role of a class representative.  *See* SOF at ¶ 33.  There is no conflict between the interests of the named Plaintiff and the members of the Class.  Rather, her interests are aligned with the Class's because the named Plaintiff, like all consumers, has been injured by the same actions by Defendants.  She seeks the same redress -- enjoining Defendants' false advertising -- and has the same interest in quickly and efficiently redressing that harm.  As such, Plaintiff is a more than adequate class representative.

Plaintiff retained counsel with extensive experience litigating complex consumer protection suits in particular and class action litigation generally.  Ansell Grimm & Aaron, P.C. ("AGA") has litigated numerous CFA and TCCWNA matters and has prosecuted and defended numerous class actions.  *See* Bauchner Decl. at ¶¶ 16-23 and **Exhibit N**.  Additionally, Richman Law Group ("RLG") focuses its practice on consumer class action litigation concerning false and misleading labeling and deceptive business practices and has also been appointed class counsel in numerous cases.  *See* Declaration of Kim Richman, Esq., dated January 25, 2019, at ¶¶ 6-8.  Counsel have vigorously prosecuted this action, expending substantial time and resources in investigating the claims, overseeing the production and review of

32

documents, taking and defending depositions, working with experts, and briefing and arguing motions.  Therefore, Rule 23(a)(4) is fully satisfied.

**B.     <u>The Proposed Class Satisfies The Rule 23(b)(2) Requirements</u>.**

Rule 23(b)(2) provides for class certification when "the party opposing the class has refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief."  Fed. R. Civ. P. 23(b)(2).[4]  A subsection (b)(2) class is appropriate when the injunctive relief provided to the named plaintiff would be identical to the relief obtainable by any member of the class:

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or none of them. In other words Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.

*Wal-Mart*, 564 U.S. at 360.

The standard is met here because the injunctive relief sought by Plaintiff would provide relief to her in the same way it would provide relief to any and every member of the Class.  In other words, the effect of the injunction would be the same

---

[4]      Rule 23(b)(2) classes "have no requirement that the common questions predominate over individual questions, or that the class action be superior to other available methods for the fair and efficient adjudication of the controversy. Such predominance and superiority tests are applicable only for Rule 23(b)(3) class actions." 2 Newberg On Class Actions §4:11.

if obtained by an individual or on behalf of a class.  As discussed in Section I, *supra*, a permanent injunction is appropriate to enjoin Defendant's false advertising and for corrective advertising and conformity with the governing standard of identity and state laws.  *See, e.g., Weinberg,* 173 N.J. at 253 (noting CFA "allows a private cause of action to proceed for all available remedies, including an injunction, whenever" plaintiff asserts a bona fide CFA claim); *Laufer,* 385 N.J. Super. at 185 (concluding "by the express terms of [N.J.S.A. 56:8-19], a private plaintiff who establishes a violation of the Consumer Fraud Act may obtain not only monetary relief, including treble damages and attorneys' fees, but also 'equitable relief'").  Certification of Rule 23(b)(2) classes to curtail misleading advertising and deceptive sales practices is routine and appropriate in cases such as this.  *See, e.g.*, *Gelb v. American Tel. & Tel. Co.,* 150 F.R.D. 76, 78 (S.D.N.Y. 1993) (certifying Rule 23(b)(2) class in fraud case seeking injunction to end defendants' misleading advertising of long distance telephone cards).

This action qualifies as a class under Rule 23(b)(2) because Defendants' uniform false or misleading labeling is an action of general applicability to all members of the Class and the requested injunctive relief will be reasonably necessary and appropriate after Plaintiff succeeds on the merits.  Such request can be satisfied with "indivisible" equitable relief that benefits all Class members at once, namely a prohibition on Defendants using the false or misleading

representations on its labels.  For the reasons set forth above, the Court should certify the Class under Rule 23(b)(2) because injunctive relief for plaintiff and Class members is appropriate.

## **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that the Court grant summary judgment in favor of Plaintiff and against Defendants pursuant to Fed. R. Civ. P. 56, grant class certification pursuant to Fed. R. Civ. P. 23, enjoin Defendants from making further false or misleading claims regarding the Fruit Snacks, and grant such other, further, and additional relief as the Court deems just and proper.

Dated:  Woodland Park, New Jersey
          January 25, 2019

                                       Respectfully submitted

                                       **ANSELL GRIMM & AARON, P.C.**

                                       _____

                                        Joshua S. Bauchner, Esq.
                                        jb@ansellgrimm.com
                                        Michael H. Ansell
                                        mha@ansellgrimm.com
                                        365 Rifle Camp Road
                                        Woodland Park, New Jersey 07424
                                        (973) 247-9000 (t)
                                        (973) 247-9199 (f)

                                        **RICHMAN LAW GROUP**
                                        Kim E. Richman (*Pro Hac Vice*)
                                        krichman@richmanlawgroup.com
                                        Jaimie Mak (SBN 236505)
                                        jmak@richmanlawgroup.com
                                        535 Mission Street
                                        San Francisco, CA 94105
                                        (415) 259-5688 (t)
                                        (718) 228-8522 (f)