# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAUREN HALL, on behalf of herself and others similarly situated, | Civil Action No. 3:18-cv-10500-AET-LHG |
| Plaintiff, | MOTION DATE:  April 1, 2019 |
| v. | ORAL ARGUMENT REQUESTED |
| WELCH FOODS, INC., A COOPERATIVE and THE PROMOTION IN MOTION COMPANIES, INC, | |
| Defendants. | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CLASS CERTIFICATION

Ronald J. Levine, Esq.
rlevine@herrick.com
David R. King, Esq.
dking@herrick.com
HERRICK, FEINSTEIN LLP
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 274-2000
Facsimile: (973) 274-2500
ADDITIONAL COUNSEL LISTED ON
SIGNATURE PAGE
*Attorneys for Defendants,*
*Welch Foods Inc., A Cooperative*
*and The Promotion In Motion Companies, Inc.*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

I.  INTRODUCTION ..................................................................................1

II.  BACKGROUND FACTS ........................................................................3

    A.  PIM's Product Manufacturing Process Of WFS ........................3

    B.  The Atik Action ..........................................................................5

    C.  The Hall Action ...........................................................................6

    D.  Plaintiff's Allegations and Testimony .......................................7

    E.  Plaintiff's Lack of Involvement in the Action ...........................9

ARGUMENT REGARDING MOTION FOR SUMMARY JUDGMENT ............9

III.  LEGAL STANDARD FOR SUMMARY JUDGMENT ....................9

IV.  NONE OF PIM'S REPRESENTATIONS ABOUT WFS
    VIOLATE THE NJCFA................................................................10

    A.  Legal Standard for NJCFA Claim ............................................10

    B.  Plaintiff Has Failed to Establish That WFS's
        Identification of The Daily Vitamin Values is False or
        Misleading....................................................................................11

    C.  The Statement "No Preservatives" on WFS is a True
        Statement.....................................................................................13

    D.  PIM's Statement "Fruit is our 1st Ingredient" on the WFS
        Label is True, and PIM is not only Permitted to, but is
        Required, to Identify "Fruit Puree" as an Ingredient ...............15

        1.  PIM's Labeling of "Fruit Puree" is Consistent with
            Applicable FDA Regulations.........................................15

        2.  The Common or Usual Name for "Fruit Puree" is
            "Fruit Puree"..................................................................18

        3.  Plaintiff's Claims Are Preempted.................................20

        a.     Plaintiff's Claims Are Expressly Preempted ..... 20

        b.     Plaintiff's Claims Are Impliedly Preempted...... 21

    E.    Plaintiff Has Failed to Set Forth Any Evidence That Any of the Challenged Representations Are Misleading to a Reasonable Consumer ................................................................22

    F.    Plaintiff Has Failed to Introduce Any Evidence of Ascertainable Loss ...................................................................25

V.    PLAINTIFF HAS NOT ESTABLISHED A BREACH OF WARRANTY ..........................................................................26

VI.    PLAINTIFF HAS NOT ESTABLISHED A VIOLATION OF TCCWNA.........................................................................27

VII.    PLAINTIFF HAS FAILED TO PRESENT ANY EVIDENCE REGARDING DEFENDANT WELCH'S ........................................28

ARGUMENT REGARDING MOTION FOR CLASS CERTIFICATION ..........29

VIII.  RULE 23 REQUIREMENTS FOR CLASS CERTIFICATION.......29

IX.    PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF.................................................................................30

X.    PLAINTIFF HAS NOT SATISFIED THE RULE 23(A) FACTORS .............................................................................33

    A.    Plaintiff Has Not Submitted Any Evidence to Establish Numerosity....................................................................33

    B.    Plaintiff Has Not Shown There Are Any Questions Common to the Putative Class.................................................34

    C.    Plaintiff's Claims Are Not Typical of the Class......................36

    D.    Plaintiff Is Not an Adequate Representative of the Putative Class...........................................................................38

XI.    CONCLUSION ...............................................................40

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

## Federal Cases

*Adamson v. Ortho McNeil Pharm., Inc.*,
  463 F. Supp. 2d 496 (D.N.J. 2006).................................................................23

*Allchin v. Volume Srvs., Inc.*,
  2017 WL 3337141 (S.D. Cal. Aug. 4, 2017).............................................35, 36

*Atik v. Welch Foods, Inc., a Cooperative*,
  2016 WL 11480151 (E.D.N.Y. Aug. 5, 2016) .............................................6, 31

*Atik v. Welch Foods Inc. et al*,
  Case No. 15-cv-5405 (E.D.N.Y. 2015) ....................................................5, 6, 31

*Ayer v. Frontier Comm'n Corp.*,
  2017 WL 3891358 (C.D. Cal. Sept. 5, 2017) ...................................................39

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006) .............................................................................36

*Bodner v. Oreck Direct, LLC*,
  2007 WL 1223777 (N.D. Cal. Apr. 25, 2007)...................................................38

*Bonnieview Homeowners Assn., LLC v. Woodmont Bldrs.*,
  655 F. Supp. 2d 473 (D.N.J. 2009)...................................................................10

*Buckman v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001)..........................................................................................22

*Carter v. PJS of Parma, Inc.*,
  2016 WL 3387597 (N.D. Ohio June 20, 2016) .................................................35

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)......................................................................9, 10, 25, 28

*Chuang v. Dr. Pepper Snapple Grp., Inc.*,
  2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) .................................................23

*Crozier v. Johnson & Johnson Consumer Cos., Inc.*,
  901 F. Supp. 2d 494 (D.N.J. 2012)...................................................................24

*Dzielak v. Whirlpool Corp.*,
   26 F. Supp. 3d 304 (D.N.J. 2014)........................................................26

*Eastman v. First Data Corp.*,
   292 F.R.D. 181 (D.N.J. 2013).............................................................35

*In re Ford Motor Co. E–350 Van Prods. Liability Litigation (No. II)*,
   2010 WL 2813788 (D.N.J. July 9, 2010) ............................................26

*Hadley v. Kellogg Sales Co.*,
   243 F.Supp.3d 1074 (N.D. Cal. 2017)................................................24

*Hammer v. Vital Pharm.*,
   2015 WL 12844442 (D.N.J. Mar. 31, 2015) .......................................37

*Harnish v. Widener Univ. Sch. of Law*,
   931 F. Supp. 2d 641 (D.N.J. 2013).....................................................22

*Hayes v. Magnachip Semiconductor Corp.*,
   2017 WL 512777 (N.D. Cal. Feb. 8, 2017).........................................39

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Prac. &
   Liab. Litig.*,
   903 F.3d 278 (3d Cir. 2018) ........................................................32, 33

*Katz v. Aetna Cas. & Sur. Co.*,
   972 F.2d 53 (3d Cir. 1992) .................................................................10

*Krueger v. Wyeth, Inc.*,
   2008 WL 481956 (S.D. Cal. Feb. 19, 2008)........................................39

*Lilly v. ConAgra Foods, Inc.*,
   743 F.3d 662 (9th Cir. 2014) ..............................................................20

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) ........................................................33, 34

*McClain v. Lufkin Indus., Inc.*,
   519 F.3d 264 (5th Cir. 2008) ..............................................................39

*McNair v. Synapse Grp. Inc.*,
   672 F.3d 213 (3d Cir. 2012) ........................................................31, 32

*Mielo v. Steak 'n Shake Operations, Inc.*,
  897 F. 3d 467 (3d Cir. 2018) ...............................................................29, 30, 33

*Mladenov v. Wegmans Food Markets, Inc.*,
  124 F. Supp. 3d 360 (D.N.J. 2015)........................................................28

*Nafar v. Hollywood Tanning Sys.*,
  339 F. App'x 216 (3d Cir. 2009) ..........................................................39

*Pearson v. Component Tech. Corp.*,
  247 F.3d 471 (3d Cir. 2001) ...............................................................9

*Portfolio One, LLC v. Joie*,
  2019 WL 291157 (D.N.J. Jan. 23, 2019)...........................................10, 28

*Rapcinsky v. Skinnygirl Cocktails, L.L.C*,
  2013 WL 93636 (S.D.N.Y. Jan. 9, 2013) ..............................................37

*Sanchez v. Wal Mart Stores, Inc.*,
  2009 WL 1514435 (E.D. Cal. May 28, 2009) ........................................39

*In re Schering Plough Corp ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) ...............................................................36

*In re Toshiba Amer. HD DVD Marketing & Sales Prac. Lit.*,
  2009 WL 2940081 (D.N.J. Sept. 11, 2009).........................................26

*In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*,
  2018 WL 497071 (D.N.J. Jan. 22, 2018)..............................................31

*Van Holt v. Liberty Mut. Fire Ins. Co.*,
  163 F.3d 161 (3d Cir. 1998) ...............................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)........................................................29, 30, 33, 35

*Watkins v. DineEquity, Inc.*,
  591 Fed. Appx. 132 (3d Cir. 2014)......................................................27

*Workman v. Plum Inc.*,
  141 F. Supp. 3d 1032 (N.D. Cal. 2015)................................................24

## State Cases

*Bosland v. Warnock Dodge, Inc.*,
    197 N.J. 543 (2009) ...................................................................................10, 27

*Cox v. Sears Roebuck & Co.*,
    138 N.J. 2 (1994) ...............................................................................................25

*Suarez v. E. Int'l Coll.*,
    428 N.J. Super. 10 (App. Div. 2012) .................................................................11

*Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*,
    139 N.J. 392 (1995) ...........................................................................................23

## Rules & Statutes

21 C.F.R. 101.22(a)(5) .............................................................................................14

21 C.F.R. § 101.4 ...............................................................................15, 16, 17, 18, 21

21 C.F.R. § 101.9 .....................................................................................................14

21 C.F.R. § 101.95 ...................................................................................................28

21 C.F.R. § 102.5(a) ................................................................................................18

21 C.F.R. § 102.5(d) ................................................................................................19

21 C.F.R. 104.20 ............................................................................................11, 12, 13

21 C.F.R. 104.20(c) .............................................................................................12, 13

21 C.F.R. § 150.160 .................................................................................................17

21 C.F.R. §§ 182.8013 .............................................................................................14

21 U.S.C. § 337(a) ...................................................................................................21

21 U.S.C. §§ 343-1(a)(2), (a)(3) ..............................................................................20

Fed. R. Civ. P. 23(a)(2) ...........................................................................................34

Fed. R. Civ. P. 23(a)(3) ...........................................................................................36

Fed. R. Civ. P. 23(a)(4) .......................................................................................38, 40

Fed. R. Civ. P. 23(b)(2)..................................................................30, 31, 39, 40

Fed. R. Civ. P. 23(b)(3)..........................................................................1, 3, 4

Fed. R. Civ. P.. 56.....................................................................................40

Local Rule 56.1.........................................................................................24

## Other Authorities

41 Fed. Reg. 1156, 1157 (Jan. 6, 1976)....................................................17

FDA-2009-D-0430-0073, available at www.regulations.gov ................................19

*Food Labeling: General Requirements for Health Claims for Food*, 58
    Fed. Reg, 2478, 2522 (Jan. 6, 1993)...................................................11

Nutrition Labeling and Education Act......................................................20

## I.  INTRODUCTION

Plaintiff's Motion is a bait and switch.  Her Complaint (and the discovery she and her former co-class representatives pursued) focused on establishing a Fed. R. Civ. Proc. 23(b)(3) damages class based on claims that Defendants deceptively marketed the products as containing more fruit, and being more healthy, than they actually are.  This Motion, on the other hand, ignores those claims in favor of a 23(b)(2) injunctive class alleging (incorrectly) technical non-compliance with food labeling regulations.  The reason for this is simple: Plaintiff cannot prove the claims in her Complaint.  Unfortunately for her, she also cannot prove the claims for which she seeks summary judgment and class certification on this Motion.

The packaging and labeling for Welch's Fruit Snacks ("WFS") is not false or misleading.  The WFS labels depict true and accurate information about the products' ingredients and are in full compliance with applicable Food and Drug Administration ("FDA") regulations.  Likely recognizing that she could not prevail on her original claim that WFS somehow misleads consumers into believing the products are healthy, a representation not found anywhere on WFS packaging or marketing materials, Plaintiff has attempted a wholesale revision of her claims, asserting new arguments for the first time in this Motion and completely abandoning significant portions of her claims.  Not only are Plaintiff's actions inappropriate and a violation of her fiduciary duties to the class she purports to

1

represent, but Plaintiff has not even remotely approached her burden of establishing that she is entitled to either class certification or summary judgment.

Plaintiff's Motion for Summary Judgment must be denied for myriad reasons.  First, the representations "100% Vitamin C" and "25% Vitamins A & E" of the daily value per serving are accurate representations of the amount of those vitamins in the product.  Contrary to Plaintiff's factually incorrect and unsupported position, Defendant The Promotion In Motion Companies, Inc. ("PIM") does not unlawfully fortify WFS with vitamins that never existed, but rather enriches WFS with vitamins lost during the manufacturing process.  Plaintiff's own citation to the applicable FDA regulations confirms PIM's vitamin enrichment is permissible.

Second, the representation "no preservatives" is accurate because the food additives ascorbic acid and tocopherols are used as vitamin enrichment, not preservatives.  While these food ingredients ***can be*** used as preservatives, they are not used for that purpose in WFS.  Indeed, the use of these food additives for purposes other than preservation is widely accepted in the food industry.

Third, the representation "Fruit is Our 1st Ingredient" is an accurate representation.  There is more fruit in the product than any other ingredient.  Plaintiff takes issue with the way PIM identifies "fruit puree" as an ingredient – an ingredient used in more than 100 products across the country.  But as discussed below, FDA regulations expressly permit food manufacturers to identify a

combined ingredient when it does not know the breakdown of the constituent ingredients – the exact factual scenario here.

Additionally, Plaintiff has submitted no evidence whatsoever that the true statements found on WFS's label are misleading to an average consumer or that she has sustained any damage in a concrete amount.  As a result of all of Plaintiff's shortcomings, her Motion for Summary Judgment must be denied.

In addition to misinterpreting the applicable law, Plaintiff has abandoned her claim for class wide damages, seeking to certify an injunctive relief class only. Recognizing that she cannot certify a damages class in the Third Circuit, Plaintiff has sold out the class she purports to represent by attempting to obtain relief to which she is not entitled.  Specifically, Plaintiff does not have Article III standing to pursue injunctive relief and, therefore, cannot certify an injunctive relief class. Plaintiff admitted at deposition that she does not have any intention of purchasing WFS in the future.  For that reason, and other substantive defects in Plaintiff's argument, Plaintiff's Motion for Class Certification must be denied.

## II.  BACKGROUND FACTS

### A.    PIM's Product Manufacturing Process Of WFS

PIM is the manufacturer and distributor of WFS.  Declaration of Basant Dwivedi, Ph. D. ("Dwivedi Decl.") ¶ 10.  PIM has been manufacturing and selling WFS since approximately 2001.  *Id.*  PIM licenses the name "Welch's" from

Welch Foods Inc., A Cooperative ("Welch's"). *Id.* Other than licensing its name, Welch's is not involved in the formulation, manufacture, or sale of WFS. *Id.*; *see also* Declaration of Matthew Aufman ("Aufman Decl.") ¶¶ 3-7.

The formula for WFS has changed several times over the past 17 years, each time improving the quality and flavor and increasing the fruit content. Dwivedi Decl. ¶ 11. In 2014, PIM reformulated WFS to replace the "fruit juice concentrate" ingredient with the "fruit puree" ingredient, and it began selling the reformulated WFS with the fruit puree ingredient in 2015. *Id.*

Each variety of WFS contains, among other ingredients, a fruit puree comprising various constituent fruits and nothing else; the puree is 100% fruit. *Id.* at ¶¶ 12, 14. ███████████████████████████████████████
████████████████████ *Id.* at ¶ 15. In every WFS, the fruit puree is the most predominant ingredient by weight. *Id.* Accordingly, at the same time as the reformulation, PIM began including the statement "Fruit is our 1st Ingredient" on WFS packaging. *Id.* at ¶ 11.

No person at PIM knows the percentage of each of the constituent fruits in the fruit puree, as that information is the proprietary formula of PIM's supplier, who has refused to provide that information to PIM. *Id.* at ¶ 14. The supplier discloses the constituent fruits in the fruit puree, and PIM in turn, discloses that information on the package labels, but the specific percentage of each constituent

fruit that comprises the fruit puree is the proprietary formula of the supplier. *Id.* However, PIM does know that for every WFS sold in the United States, the fruit is the most predominant ingredient in the product by weight. *Id.* at ¶¶ 11, 15.

PIM also uses several ingredients to enrich the vitamin content of WFS. *See id.* at ¶¶ 19-27. ███████████████████████████████

████████████████████████████████████████

███████████████████ *Id.* at ¶¶ 19. █████████████████

████████████████████████████████████████

███████████████████ *Id.* at ¶ 21. Based on the total vitamin content, PIM appropriately labels WFS as containing "100% Vitamin C" and "25% Vitamins A & E" of the daily value per serving. *Id.*

As such, ascorbic acid and tocopherol are not "preservatives" in WFS products, as they are not used to preserve the product. *Id*. at ¶¶ 22-29. In fact, WFS do not require preservatives because they are shelf-stable with low moisture. *Id.* at ¶ 28. These ingredients are used in WFS to enrich the vitamin content lost during the manufacturing process. *Id.*

### B.      The Atik Action

On September 21, 2015, Plaintiffs Aliza Atik and Winnie Lau filed a putative nationwide class action complaint (the "Atik Compl.") against Defendants in the Eastern District of New York under the caption *Atik v. Welch Foods Inc. et*

*al*, Case No. 15-cv-5405 (E.D.N.Y. 2015) (the "Atik Action"). *See* Declaration of Daniel S. Silverman ("Silverman Decl.") ¶ 2, Ex. A.

 As relevant here, Defendants moved to dismiss the Atik Complaint because Plaintiffs Atik and Lau lacked standing to seek injunctive relief. *See Atik v. Welch Foods, Inc., a Cooperative*, 2016 WL 11480151, at *3 (E.D.N.Y. Aug. 5, 2016), *report and recommendation adopted by*, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016). The Eastern District of New York agreed and dismissed Plaintiffs' prayer for injunctive relief for lack of Article III standing. *Id*.

### C. The Hall Action

 On April 5, 2017, Plaintiff filed a class action complaint against Defendants in the Superior Court of New Jersey (the "Hall Action") purportedly on behalf of herself and consumers in New Jersey who purchased WFS (the "Class"), that was nearly identical to the Atik Action Complaint. *See* Dkt. No. 1-1; *see also* Dkt. No. 11 (operative First Amended Complaint, or "FAC"). Defendants subsequently removed the complaint to this Court (*see* Dkt. No. 1) and then transferred it to the Eastern District of New York to join the Atik Action which, as a putative nationwide class, encompassed the Hall Action. Dkt. No. 23.

 After the transfer, Defendants requested a consolidation of the Atik and Hall Actions, which was granted on October 20, 2017 (hereafter, the "Action"). Silverman Decl. ¶ 3, Ex. B at Dkt. No. 55 & Minute Entry Order dated October 25,

2017.  Thereafter, on November 3, 2017, Plaintiff Lau voluntarily dismissed her claims, and Plaintiff Atik also voluntarily dismissed her claims on December 19, 2017.  *Id.* at ¶¶ 5-6, Exs. D & E.  As a result, only Plaintiff remained with her claims on behalf of the putative New Jersey Class.

Defendants then moved to re-transfer the Action to this Court because the original purpose of the transfer—to avoid inconsistent results and judicial inefficiencies from proceeding in two courts—had been frustrated.  *Id.* at ¶ 7, Ex. F.  The Eastern District of New York agreed and ordered the Action to be returned to this Court.  *Id.* at ¶ 8, Ex. G.

### D.   Plaintiff's Allegations and Testimony

Plaintiff alleges that she purchased "several varieties" of WFS for herself and her family over the course of approximately seven years.  FAC ¶¶ 14-16.  Plaintiff claims that she: (i) "wished to purchase ***healthy snacks*** for her family;" (ii) "relied on" alleged misrepresentations that WFS "contained significant amounts of the actual fruit Defendants emphasized in the marketing and on the labeling of [WFS], were ***nutritious and healthful***, and were more healthful than similar products;" and (iii) would not have purchased WFS had she "known the true fruit content, as well as the ***true nutritional and health qualities*** of the [WFS] she purchased."  *Id.* ¶¶12, 15 (emphasis added).

Yet, at Plaintiff's deposition on March 28, 2018, she sang a different tune,

testifying that the most important reason she bought WFS was because she wanted a snack for her children that they would like, *e.g.* taste and flavor. *See* Declaration of Joshua S. Bauchner, Esq. ("Bauchner Decl.") ¶ 7, Ex. E ("Hall Tr.") at 100:11-101:12; 102:20-103:19; 125:23-126:10; 129:3-11; 286:16-20; 289:12-20. She did *not* buy WFS because of its fruit content (*see id.* at 161:7-13; 202:19-21; 235:2-11; 249:17-19) or for the constituent fruits in the fruit puree (*see id.* at 201:20-202:7). Plaintiff only ever viewed the WFS box or label. *See id.* at 233:17-234:14. She did not recall ever seeing any advertising for WFS other than WFS themselves in-store. *See id.* at 111:12-16. She also never visited PIM's or Welch's websites or otherwise viewed anything on the internet. *See id.* at 111:23-25; 270:7-9.

Plaintiff also testified that, over the course of the seven-year period she purchased WFS, she looked at the WFS' ingredient list. *See id.* at 88:7-12. She knew when she purchased WFS that they contained 11 grams of sugar and other ingredients such as corn syrup and modified corn starch. *See id.* at 150:19-151:4; 172:21-25; 175:9-12; 283:24-284:15; 285:23-286:2.

Plaintiff last bought WFS "probably two years" before her March 2018 deposition "because I have become more knowledgeable about the foods that I give my children and I try not to give them as much processed and sugar [sic]," (*see id.* at 48:3-9; 173:6-8, 173:11-20), and "there's better options to give my kids for snacks than fruit snacks." *See id.* at 175:18-25; 98:13-99:13.

### E.   Plaintiff's Lack of Involvement in the Action

Plaintiff testified that she did not see her Complaint before it was filed and saw it for the first time the morning of her deposition. *See id.* at 23:3-10; 23:22-24:13; 41:6-42:3; 165:10-20.  Plaintiff was unfamiliar with basic allegations of her Complaint, testifying that she learned of Defendants' alleged "deceptions" from Plaintiff's Counsel. *See id.* at 265:22-25.

Plaintiff also did not participate in the preparation of her discovery responses or review them before they were served. *See id.* at 30:17-32:14; 35:5-36:2; 39:11-21; 40:5-7.  Plaintiff testified that she had never seen Defendants' document requests and did not review them before responding that she had no responsive documents. *See id.* at 42:9-43:11; 279:23-280:3.

## ARGUMENT REGARDING MOTION FOR SUMMARY JUDGMENT[1]

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The moving party has the initial burden of

---

[1] Plaintiff has not moved for summary judgment or class certification with respect to her claims for implied warranty, common law fraud, or unjust enrichment.  Defendants presume Plaintiff has abandoned these claims in connection with her wholesale pivot in her legal strategy.

demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. To sustain this initial burden, the moving party must support its showing by "citing to particular parts of materials in the record" and other evidence establishing that the moving party is entitled to judgment as a matter of law. *Portfolio One, LLC v. Joie*, 2019 WL 291157, at * 2 (D.N.J. Jan. 23, 2019) (*quoting* Fed. R. Civ. P. 56 (c)(1)(A)).

"If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Celotex Corp.*, 477 U.S. at 33. "[A] complete failure of proof concerning an essential element of the [cause of action] necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992).

## IV.   NONE OF PIM'S REPRESENTATIONS ABOUT WFS VIOLATE THE NJCFA

### A.   Legal Standard for NJCFA Claim

To establish a violation of the NJCFA, a plaintiff must prove "'1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" *Bonnieview Homeowners Assn., LLC v. Woodmont Bldrs*., 655 F. Supp. 2d 473, 504 (D.N.J. 2009) (quoting *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009)). Affirmative act violations, the only form of violation alleged here (*see*

Mot. at 11), consist of an "affirmative misrepresentation . . . which is material to the transaction and which is a statement of fact, found to be false, [and] made to induce the buyer to make the purchase." *Suarez v. E. Int'l Coll.*, 428 N.J. Super. 10, 30-31 (App. Div. 2012).

### B. Plaintiff Has Failed to Establish That WFS's Identification of The Daily Vitamin Values is False or Misleading

Plaintiff has not established that PIM engaged in any unlawful conduct with respect to WFS's identification of the daily values of Vitamins A, C and E. Plaintiff does not dispute that WFS contain the vitamins identified, negating any claim the representations are false. *See* Mot. at 13-17. Plaintiff argues that those representations are false or misleading ***because*** they do not comply with FDA regulations regarding vitamin fortification. *Id.* Plaintiff's argument – one that was not a reason Plaintiff purchased WFS – is based on a fundamentally flawed understanding of FDA's policies on: (1) vitamin enrichment, i.e., restoring vitamins that were lost during the processing of the food; and (2) vitamin fortification, i.e., introducing vitamins that were never in the food.

FDA's fortification policy, the policy with which Plaintiff contends that PIM is not in compliance, distinguishes between impermissible fortification and permissible enrichment. 21 C.F.R. 104.20. While Plaintiff correctly notes that FDA discourages the "random fortification of foods," see 21 C.F.R. 104.20, and the "indiscriminate fortification" of foods, *see* Final Rule, *Food Labeling: General*

*Requirements for Health Claims for Food*, 58 Fed. Reg, 2478, 2522 (Jan. 6, 1993),
these disfavored practices are totally irrelevant here, as PIM engaged in vitamin
enrichment rather than vitamin fortification.

The policy was intended to preclude food manufacturers from adding
vitamins into food products that were never present.  21 C.F.R. 104.20.  But that
same policy explicitly provides that a food manufacturer may enrich a product by
restoring vitamins "to a level representative of the food prior to storage, handling
and processing" (i.e. vitamin enrichment).  21 C.F.R. 104.20(c).  Thus, if a food
manufacturer is restoring vitamins that were lost during the manufacturing process,
such practice would not violate FDA's fortification policy.  *Id.*; *see also* Mot. at 16
(identifying that the policy permits restoration of nutrients lost during the
manufacturing process).  There is absolutely nothing "random" or "indiscriminate"
about reintroducing important vitamins lost during the manufacturing process.

In an effort to assert that PIM is improperly fortifying WFS with vitamins,

████████████████████████████████████████████████████

██████████████████████████████████████████ Mot. at 17.

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████ Bauchner

Decl. ¶ 10, Ex. H at 6.  ████████████████████████████████



Lastly, Plaintiff's assertion that PIM's fruit snacks are "snack foods" and, therefore, should not be fortified is entirely misplaced.  Again, even if the fruit snacks meet FDA's definition of "snack foods," PIM is not engaged in the type of vitamin fortification that FDA disfavors, i.e., it is not trying to add vitamins that the food product never possessed.  Importantly, FDA's policy of allowing vitamin enrichment does not turn on whether or not the food product at issue is a "snack food."  *See* 21 C.F.R. 104.20.

### C.   The Statement "No Preservatives" on WFS is a True Statement

Plaintiff raises yet another new argument in this Motion – that PIM's representation of "no preservatives" is false because PIM uses ascorbic acid or tocopherol as ingredients in WFS.  *See generally* FAC (lacking any such claim).

Plaintiff is wrong.  First, Plaintiff has not submitted any *evidence* that ascorbic acid or tocopherol are used as preservatives in WFS.

Second, ascorbic acid and tocopherol do not act as preservatives in WFS.  A preservative is a chemical that, when added to food, tends to prevent or retard deterioration thereof.  21 C.F.R. 101.22(a)(5).  Therefore, for a chemical to be considered a preservative, *it must act to preserve food*.  *See* http://www.dictionary.com/browse/preservative. (A preservative is "something that preserves or tends to preserve.").  Ascorbic acid and tocopherol are all approved food additives.  21 C.F.R. §§ 182.8013 (ascorbic acid – found under the "nutrients" subpart of the code), 182.8892 (tocopherols – also found under the "nutrients" section).  In fact, FDA has recognized that while these food additives ***can*** act as a preservative, they can also act as nutrients to "[r]replace vitamins and minerals lost in processing (enrichment), add nutrients that may be lacking in the diet (fortification)" (in the circumstances where vitamin fortification is permitted), as discussed above.  *See* Silverman Decl. ¶ 9, Ex. H at p. 2.

In WFS, none of the ingredients identified have a preservation effect. Ascorbic acid is recognized by the FDA as a synonym of vitamin C.  21 C.F.R. § 101.9.  Many foods are enriched with ascorbic acid and tocopherols to replenish the naturally occurring Vitamins C and E lost during the manufacturing process. Dwivedi Decl. ¶¶ 22, 25.  Ascorbic acid and tocopherols may act as a preservative

in certain foods with high moisture content.  *Id.* at ¶¶ 23, 26.  However, ascorbic

acid and tocopherols do not act as a preservative because WFS are shelf-stable

low-moisture products.  *Id.* at ¶¶ 24, 28.  Rather, they are used for vitamin

enrichment.  *Id.*

Finally, it is significant to note that more than 600 food products sold in the

United States make the claim "no preservative(s)," "preservative free," or "no

added preservative(s)" while also identifying ascorbic acid and/or alpha tocopherol

as an ingredient.  Declaration of David Lockwood ("Lockwood Decl."), ¶ 5 Ex. B.

### D.   PIM's Statement "Fruit is our 1st Ingredient" on the WFS Label is True, and PIM is not only Permitted to, but is Required, to Identify "Fruit Puree" as an Ingredient

#### 1.   PIM's Labeling of "Fruit Puree" is Consistent with Applicable FDA Regulations

It is undisputed that fruit puree is the most predominant ingredient by weight

in WFS.  Dwivedi Decl. ¶¶ 11, 15.  21 C.F.R. § 101.4 expressly authorizes PIM to

identify "fruit puree" as an ingredient on its WFS packages under the factual

circumstances presented here.  Specifically, the regulation requires that ingredients

on the label of a food "shall be listed by common or usual name in descending

order of predominance by weight."  *Id.* at § 101.4(a) (1).  The regulation then

continues providing the general rule that "the name of an ingredient shall be a

specific name and not a collective (generic) name."  *Id.* at § 101.4(b).

However, an enumerated exception is when "[a]n ingredient which itself contains two or more ingredients and which has an established common or usual name." *Id.* at § 101.4(b) (2).  When a product manufacturer uses an ingredient that meets this exception, the manufacturer has only two mandatory options:

    i.      By declaring the established common or usual name of the ingredient followed by a parenthetical listing of all ingredients contained therein in descending order of predominance …; [or]

    ii.      By incorporating into the statement of ingredients in descending order of predominance in the finished food, the common or usual name of every component of the ingredient without listing the ingredient itself.

*Id.* at § 101.4(b) (i) & (ii).  Those are the only two options available.

When a food manufacturer does not know the composition of an ingredient in the finished product, like in this case, it must follow the first option above, as it would be impossible for that manufacturer to choose the second option and list those sub-ingredients separately.  This is ***precisely*** why the FDA regulation expressly provides an exception.

In fact, when promulgating similar food labeling regulations for common or usual names for nonstandardized foods, FDA received the following comment regarding ingredient listing:

The option of declaring ingredients contained in standardized food used as an ingredient in another food by listing all ingredients contained in the standardized ingredient in descending order of predominance as they appear in the finished food ***would be impossible because manufacturers do not know the proportions of each***

16

**_ingredient used in the standardized foods_**.

41 Fed. Reg. 1156, 1157 (Jan. 6, 1976) (emphasis added).  FDA addressed this

comment in the Final Rule by stating that "[i]f a manufacturer does not have this

information available [i.e. the proportions of each ingredient in the standardized

food], he may use the alternative method."  *Id.*

Here, PIM procures the "fruit puree" used in WFS from a third-party

supplier.  Dwivedi Decl. ¶ 12.  Despite its efforts to find out the information, PIM

does not know the percentage of each constituent fruit in the fruit puree, as that

information is proprietary to the fruit puree supplier.  *Id.* at ¶ 14.  The fruit puree

supplier does, however, identify the constituent fruits in the puree and lists them by

weight in descending order.  *Id.*  Accordingly, PIM identifies the ingredient as

"fruit puree" (the common and usual name for the ingredient as discussed below)

and lists the constituent ingredients in descending order, as required by 21 C.F.R.

§101.4(b)(i).  Based on the information available to it, this would be the only

lawful way to label WFS under applicable FDA regulations.

This concept of ingredient labeling is far from novel and is grounded in

support by other FDA regulations.  For example, 21 C.F.R. § 150.160 sets forth the

labeling requirements for fruit preserves and jam.  Under that regulation, a fruit

preserve or jam may consist of one or more fruit ingredients.  *Id.* at § 150.160(a).

If a fruit preserve or jam consists of two or more fruits, the regulation requires the

manufacturer to label the ingredient as "preserve" or "jam" followed by the words "mixed fruit" or by the names of the individual constituent fruits "in the order of predominance, if any, by weight of such fruits in the combination." *Id.* at § 150.160(e) (1) (ii).  Thus, if PIM were to use a fruit preserve or fruit jam instead of fruit puree, PIM's labeling would be consistent with FDA regulations.

2.   <u>The Common or Usual Name for "Fruit Puree" is "Fruit Puree"</u>

Not only does 21 C.F.R. § 101.4 expressly authorize PIM to identify "fruit puree" as an ingredient in WFS under the specific facts presented, but "fruit puree" is the industry established common or usual name for the grouped ingredient. *See id.* at § 101.4(b) (i) (the combined ingredient must be identified by its common or usual name).  Pursuant to 21 C.F.R. § 102.5(a), "[t]he common or usual name of a food, which may be a coined term, shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients."

In each WFS product, the ingredient "fruit puree" is immediately followed by a parenthetical identifying each of the fruits that comprise the fruit puree. Taken together, the term "fruit puree" followed by a parenthetical specifically identifying each of the fruits that comprise the fruit puree clearly satisfies the regulatory requirement to simply and directly identify the nature of the food.

18

Moreover, a "common or usual name" for an ingredient "may be established by common usage or establishment of a regulation." 21 C.F.R. § 102.5(d). While the FDA has not defined "fruit puree" by regulation, there is most certainly a common usage of that descriptive term in the food industry. More than 100 food products sold by more than 35 different companies in the United States, including household names such as Chobani, Del Monte Foods, Dr. Pepper/Seven Up, and Hain Celestial Group, to name a few, identify a blend of fruits as "fruit puree" in their Statements of Ingredients. Lockwood Decl., ¶ 4 Ex. A. Such a broad usage in the food product industry has historically been sufficient for the FDA to recognize such usage as the "common name" for an ingredient. *See* Mintel Report attached to comment submitted by Domino Foods, Inc., *et al.*, on May 5, 2014 to docket number FDA-2009-D-0430-0073, available at www.regulations.gov (FDA recognized Muscovado Sugar based on its use in 106 products, and recognized Demerara Sugar based on its use in 145 products).

More importantly, Plaintiff has not identified any information that would establish that "fruit puree" is not a common or usual name for the ingredient, or that it is otherwise impermissible.

Finally, Plaintiff's citation to PIM's former use of fruit juice concentrate is a red herring. Mot. at 20. First, PIM did not use the "Fruit is our 1st Ingredient" statement (Plaintiff's challenged representation) during the time in which WFS

contained the fruit juice concentrate.  Dwivedi Decl. ¶ 11.  Second, the FDA

Guidance for Industry, which was promulgated in 2013 and upon which Plaintiff

relies, is merely guidance and not binding authority.  Bauchner Decl., Ex. L, at 3

("This guidance represents the [FDA's] current thinking on this topic. It does not

create or confer any rights for or on any person and does not bind FDA or the

public.").  Plaintiff has submitted no evidence that PIM's use of fruit juice

concentrate prior to 2015 violated any FDA regulation or was otherwise unlawful.

      3.    <u>Plaintiff's Claims Are Preempted</u>

The practical effect of an order that PIM is precluded from identifying "fruit

puree" as an ingredient in WFS is that any such order would be expressly and

impliedly preempted by the FDCA.

      a.    *Plaintiff's Claims Are Expressly Preempted*

In 1990, Congress adopted the Nutrition Labeling and Education Act

("NLEA") and amended the FDCA to "establish[] uniform food labeling

requirements…."  *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014).

Critical to that effort is the NLEA's express preemption provision, under which no

state "may directly or indirectly establish . . . any requirement for the labeling of

food . . . that is ***not identical to*** the requirement" of relevant federal regulations.

21 U.S.C. §§ 343-1(a)(2), (a)(3) (emphasis added).

Given the factual circumstances present here, in particular the fact that PIM does not know the proprietary formula of the fruit puree ingredient used in WFS, it would be impossible for PIM to comply with 21 C.F.R. § 101.4 if it were not permitted to identify fruit puree as an ingredient.  PIM cannot list the sub-ingredient fruits individually in order of predominance by weight because it does not know the percentage of each constituent fruit.  As such, it does not know if any particular constituent fruit is more or less predominant than any other ingredient in WFS, such as corn syrup, sugar, corn starch, etc.

If Plaintiff's claims were to prevail, it would have a devastating effect on PIM's business, possibly forcing PIM to stop selling WFS.  Dwivedi Decl. ¶¶ 16-18.  Indeed, an order from this Court that PIM is not permitted to identify its ingredient as "fruit puree" could trickle down and affect each of the more than 100 products from more than 35 different companies that similarly identify that ingredient.  Lockwood Decl., Ex. A.  Not only would Plaintiff and this Court be regulating PIM's business, but also numerous other companies and products.

b.   <em>Plaintiff's Claims Are Impliedly Preempted</em>

The FDCA provides no private right of action, leaving the interpretation and enforcement of its provisions and regulations entirely to the FDA.  21 U.S.C. § 337(a).  Courts have consistently held that state law claims are impliedly preempted if the existence of the FDCA is a critical element in the case, and

21

adjudicating the claim would require a court to decide whether, under the FDCA and its regulations, a violation has occurred.  *See, e.g., Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001).

Plaintiff's claims are an admitted attempt to enforce FDA regulations.  Mot. at 1.  In other words, Plaintiff's claims with respect to the statement "Fruit is our 1st Ingredient" are premised exclusively on the allegation that the statement is false or misleading *because* the grouping of fruits into a fruit puree violated the applicable FDA regulations.  Whether or not PIM is permitted to identify "fruit puree" as an ingredient is exclusively regulated by the FDA, not private citizens. As such, Plaintiff's claim with respect to "Fruit is our 1st Ingredient" is an improper attempt to enforce the FDCA and is impliedly preempted.

### E.     Plaintiff Has Failed to Set Forth Any Evidence That Any of the Challenged Representations Are Misleading to a Reasonable Consumer

Plaintiff argues, seemingly in the alternative, that even if PIM's representations are not false, they are misleading.  Mot. at pp. 21-23.  Plaintiff has failed to present any evidence that, if true, the representations are misleading to a reasonable consumer.

"Under the NJCFA, affirmative acts must be misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer."  *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 648

(D.N.J. 2013) (internal quotations and citations omitted).  While the NJCFA requires a showing of the "capacity to mislead," (*Turf Lawnmower Repair, Inc. v. Bergen Record Corp.,* 139 N.J. 392, 416 (1995)), "[m]ere customer dissatisfaction does not constitute consumer fraud."  *Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d 161, 168 (3d Cir. 1998); *see also Adamson v. Ortho McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 502 (D.N.J. 2006)(dismissing NJCFA claims on the ground that the factually true statements could not be considered misleading to a consumer).

Plaintiff has not submitted any evidence that a reasonable consumer would be misled to believe that WFS is healthier than as advertised, especially considering that the representations on the product packaging are true.  ■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■ Silverman Decl. ¶ 10, Ex. I at 7. ■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■ *Id.*

Significantly, several courts have dismissed at the pleading stage claims against PIM's fruit snack competitors who make similar claims as PIM.  For example, the Central District of California dismissed similar claims as Plaintiff asserts here, which was brought by Plaintiff's counsel in this case – The Richman Law Group – against Mott's.  *See Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577, at *6 (C.D. Cal. Sept. 20, 2017) (substantially similar Mott's Fruit

Snack packaging "could not mislead a reasonable consumer"); *see also Hadley v. Kellogg Sales Co.*, 243 F.Supp.3d 1074, 1093 (N.D. Cal. 2017) (dismissing claim "Made with Real Fruit" was misleading because "the product contains real fruit and does not misrepresent the type of fruit the product contains"); *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (dismissing claims where label contained images of ingredients actually in the product).

To the extent Plaintiff alleges that the representations not found on the product packaging, such as "wholesomeness" (which was removed from WFS packaging in 2015, *see* Dwivedi Decl. ¶ 11) or that WFS are "a better alternative to lots of other snacks," (Mot. at 22) Plaintiff has not presented any evidence that she saw or relied on any of those statements. *See Crozier v. Johnson & Johnson Consumer Cos., Inc.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (dismissing NJCFA claims because plaintiffs failed to allege that they saw the challenged representations or set forth any plausible basis that that the representations were misleading). In fact, Plaintiff admits through this Motion that she did ***not*** rely upon those representations. *See* Pl.'s Local Rule 56.1 Statement of Material Undisputed Facts ("SOF") ¶ 6.

Moreover, Plaintiff has not presented any evidence that those representations are misleading, other than incorporating the prior false and unsubstantiated

assertion that certain representations on WFS are false, which PIM has demonstrated to the contrary.

**F.** **Plaintiff Has Failed to Introduce Any Evidence of Ascertainable Loss**

In addition to failing to establish unlawful conduct, Plaintiff has failed to establish an ascertainable loss.  In fact, Plaintiff has presented no evidence on damages.  She has not identified how much she paid or even how many products she purchased.  At best, Plaintiff claims that she can figure out her damages at some later time.  Mot. at 24.  This is woefully insufficient for summary judgment, wherein Plaintiff seeks a judicial determination adjudicating her claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) ("If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial."); *see also Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 22 (1994) (New Jersey Supreme Court found, *inter alia*, that plaintiff adequately proved ascertainable loss at trial by submitting "testimony specifically address[ing] the cost of repairs, and the trial court found that [plaintiff] had adequately demonstrated those costs.").  Plaintiff's failure to submit any evidence on her alleged damages would not entitle her to a directed verdict at trial and, therefore, summary judgment must be denied.  *Id.*

Setting aside for the moment the lack of evidentiary support, Plaintiff's bare and unsubstantiated allegations that Plaintiff paid a price premium, which is all

Plaintiff's Motion provides, are not even sufficient to withstand a motion to dismiss. *See In re Toshiba Amer. HD DVD Marketing & Sales Prac. Lit.,* 2009 WL 2940081, at *13 (D.N.J. Sept. 11, 2009) (plaintiffs failed to allege how much regular DVD players cost at the time, "i.e., how much of a 'premium' they claim to have paid for their HD DVD Players."); s*ee also In re Ford Motor Co. E–350 Van Prods. Liability Litigation (No. II),* 2010 WL 2813788, at *28 (D.N.J. July 9, 2010) ("The allegations set forth by the New Jersey Plaintiffs are replete with generalized statements concerning loss; however, the evidence submitted by the New Jersey Plaintiffs contains no specific proofs such that the losses could be quantified or measured.").

## V.  PLAINTIFF HAS NOT ESTABLISHED A BREACH OF WARRANTY

To sustain a claim for breach of express warranty under New Jersey law, a plaintiff must prove that: (1) defendant made an affirmation, promise or description about the product; (2) this affirmation, promise or description became part of the basis of the bargain for the product; and (3) the product ultimately did not conform to the affirmation, promise, or description. *Dzielak v. Whirlpool Corp.,* 26 F. Supp. 3d 304, 324 (D.N.J. 2014). An otherwise general statement may create a warranty if it could be reasonably understood to constitute a representation that the product possesses a certain quality. *Id.* However, it is the plaintiff's burden to prove that such a representation could be reasonably understood by consumers to create an express warranty. *Id.* at 325.

Again, Plaintiff has not presented any evidence that a reasonable consumer would consider any of the challenged representations to have created an express warranty.  Additionally, Plaintiff relies on the same analysis set forth above regarding her CFA claims to establish a breach of express warranty.  PIM incorporates Section IV above establishing that PIM's representations for WFS are not false.  For the same reasons, Plaintiff has not sustained her burden to establish a breach of express warranty.  Consequently, her Motion must be denied.

## VI.   PLAINTIFF HAS NOT ESTABLISHED A VIOLATION OF TCCWNA

To sustain a claim under the New Jersey Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA"), a plaintiff must prove that: (1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the "seller offers a consumer contract" or gives or displays any written notice, or sign; and (4) the contract, notice or sign includes a provision that "violate[s] any legal right of a consumer" or responsibility of a seller.  *Watkins v. DineEquity, Inc.,* 591 Fed. Appx. 132, 135 (3d Cir. 2014); *Bosland v. Warnock Dodge, Inc.,* 396 N.J.Sup. 267, 278 (App. Div. 2007), *aff'd,* 197 N.J. 543 (2009).

The TCCWNA only bolsters rights established by other laws; it does not create any new consumer rights.  *Watkins,* 591 Fed. Appx. at 134.  Accordingly, to the extent Plaintiff's TCCWNA rely on her NJCFA claim, Plaintiff's Motion for Summary Judgment must be denied for the same reasons as discussed in Section

27

IV above.  *See Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 380 (D.N.J. 2015) ("Since the Court finds that Plaintiffs' have failed to state viable CFA claims, Plaintiffs' TCCWNA claims cannot survive to the extent they rely on the alleged CFA violations.").

Further, Plaintiff's reliance on violations of FDA regulations do not create liability under the TCCWNA.  *See Mladenov*, 124 F. Supp. 3d at 380 ("Plaintiffs' TCCWNA claims also fail to the extent they rely on alleged violations of 21 C.F.R. § 101.95.").  Plaintiff's claims rely exclusively on PIM's alleged violation of FDA regulations.  *See* Mot. at 1 ("These misrepresentations are in violation of numerous regulations promulgated by the [FDA]"); *see also id.* at 3 ("These indisputable violations of FDA regulations compel summary judgment in favor of Plaintiff.").  Plaintiff's alleged violations cannot sustain a claim under the TCCWNA.

## VII.   <u>PLAINTIFF HAS FAILED TO PRESENT ANY EVIDENCE REGARDING DEFENDANT WELCH'S</u>

Plaintiff had the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  To sustain this initial burden, Plaintiff was required to support her showing by "citing to particular parts of materials in the record" and other evidence establishing that she is entitled to judgment as a matter of law as to Welch's.  *Portfolio One, LLC v. Joie*, 2019 WL 291157, at * 2 (D.N.J Jan. 23, 2019)(*quoting* Fed. R. Civ. P. 56 (c)(1)(A)).

Plaintiff has offered absolutely no evidence that Defendant Welch's engaged

in any unlawful conduct, as required for her NJCFA cause of action.  Nor has

Plaintiff introduced any evidence that Welch's made any representations that could

serve as the basis for an express warranty.  Plaintiff has failed to set forth any

evidence that Welch's had any involvement in the formulation, marketing, or sales

of WFS.  In fact, the only evidence before the Court is that Welch's had no such

involvement.  Aufman Decl. ¶¶ 3-7.  Welch's merely licenses its name to PIM.  *Id.*

This is consistent with Welch's discovery response, all of which identify that

Welch's does not have any information regarding WFS other than what is found on

the product label.  *See* Bauchner Decl., ¶ 8 Ex. F.  Thus, Plaintiff has failed her

burden to establish any liability against Welch's.  Plaintiff's Motion with respect to

Welch's must, therefore, be denied.

## ARGUMENT REGARDING MOTION FOR CLASS CERTIFICATION

## VIII.  RULE 23 REQUIREMENTS FOR CLASS CERTIFICATION

As the party seeking class certification, Plaintiff bears the burden of proving

that she has met all four requirements of Rule 23(a) – numerosity, commonality,

typicality, and adequacy – and at least one of the requirements of Rule 23(b).  *See*

*Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 482 (3d Cir. 2018).  As the

Supreme Court reaffirmed, "actual, not presumed, conformance with Rule 23(a)

remains . . . indispensable."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351

29

(2011) (citations omitted).  A court may only certify a class once it has concluded, "**after a rigorous analysis**, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350-351 (emphasis added).

Rule 23 "does not set forth a mere pleading standard." *Mielo*, 897 F.3d at 483 (quoting *Dukes*, 564 U.S. at 350).  Rule 23 findings must be based on factual determinations supported by a preponderance of the evidence.  *Id.* at 483-84. Thus, Plaintiff must present evidence – not allegations or conclusory statements – establishing each fact necessary to meet the requirements of Rule 23.  *Dukes*, 564 U.S. at 350 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to ***prove*** that there are ***in fact*** sufficiently numerous parties, common questions of law or fact, etc.") (citations omitted; emphasis added).  The Third Circuit has explicitly rejected a "relaxed" certification standard, instead holding that "[w]hen courts harbor doubt as to whether a plaintiff has carried her burden under Rule 23, the class should not be certified." *Mielo*, 897 F.3d at 483.

## IX.   PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF

From the outset, Plaintiff and Plaintiff's Counsel have litigated this Action as one for monetary damages. *See* Silverman Decl. ¶¶ 23-28.  Yet now, at the eleventh hour, Plaintiff has abandoned her demand for monetary relief for the putative Class and instead seeks to certify only an injunctive class under Rule

23(b)(2).  However, Plaintiff faces an insurmountable obstacle to this reversal: she lacks standing to seek injunctive relief.  It is axiomatic that a plaintiff must have standing to pursue injunctive relief in order to seek certification of a Rule 23(b)(2) class.  *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012).

Plaintiff and her counsel should have known that Plaintiff lacked standing to pursue injunctive relief or certify an injunction class.  In the Atik Action, litigated by Plaintiff's counsel The Richman Law Group, the Eastern District of New York dismissed plaintiffs' prayer for injunctive relief for lack of standing based on the same allegations Plaintiff asserts here.  *See Atik*, 2016 WL 11480151, at *5.

As this Court is aware, courts within the Third Circuit apply exactly the same standard on standing as that applied by the Eastern District of New York.  "When, as in this case, prospective relief is sought, the plaintiff must show that he is likely to suffer future injury from the defendant's conduct."  *In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, 2018 WL 497071, at *12 (D.N.J. Jan. 22, 2018) (quoting *McNair*, 672 F.3d at 223) (internal quotations omitted).  In *McNair*, the Third Circuit rejected an argument that the plaintiffs had standing because they "may accept a [Defendant] offer in the future" because that was "a matter of pure speculation."  672 F.3d at 225.  While the plaintiffs' past alleged injuries "may suffice to confer individual standing for monetary relief, the wholly conjectural future injury [plaintiffs] rely on does not, and cannot, satisfy the

constitutional requirement that a plaintiff seeking injunctive relief must demonstrate a likelihood of future harm." *Id.*

The Third Circuit later extended the scope of *McNair* and specifically held that allegations such as Plaintiff's that she would buy WFS again if the label were changed cannot establish Article III standing. *See In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Prac. & Liab. Litig.*, 903 F.3d 278, 293 (3d Cir. 2018). The Court stated that it "will not give cognizance to this sort of 'stop me before I buy again' claim," and "the law accords people the dignity of assuming that they act rationally, in light of the information they possess." *Id.* (quoting *McNair*, 672 F.3d at 225).

Plaintiff's own damning testimony affirmatively establishes that she lacks such standing because she unequivocally testified that she would not buy WFS again under any circumstances. Hall Tr. at 264:16-17. Plaintiff was fully aware of the nutritional content of WFS – including their sugar content and inclusion of corn syrup and modified corn starch – during the time she bought them. *See supra* at 8. Despite this knowledge, she kept buying them anyway. Hall Tr. at 99:11-13; 106:8-107:11; 128:5-129:2; 148:8-11; 156:9-14, 156:17; 284:9-11; 286:3-5. It was only once she decided to no longer give her children "as much processed and sugar [sic]" that she stopped buying WFS, which occurred likely in 2016. *Id.* at 48:3-9; 173:6-8, 173:11-20. Plaintiff testified: "I try not to feed my kids fruit snacks

anymore[,] especially, those [i.e., WFS]" (*id.* at 264:16-17), and "there's better options to give my kids for snacks than fruit snacks." *Id.* at 175:18-25; *see also* 98:13-99:13.

Given this testimony, Plaintiff cannot even claim the "stop me before I buy again" argument rejected by the Third Circuit. *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Prac. & Liab. Litig.*, 903 F.3d at 293. As Plaintiff conceded, there is no likelihood that she would purchase WFS again. Accordingly, her Motion seeking to certify an injunctive relief class must be denied.

## X.   <u>PLAINTIFF HAS NOT SATISFIED THE RULE 23(A) FACTORS</u>

As the Supreme Court and Third Circuit have stated, it is Plaintiff's burden to affirmatively demonstrate that the putative New Jersey Class meets the requirements of Rule 23(a), and her proof is subject to a rigorous analysis as to each element. *Dukes*, 564 U.S. at 350-51; *Mielo*, 897 F.3d at 482. Plaintiff has failed to meet that burden with respect to each of the Rule 23(a) requirements.

### A.   <u>Plaintiff Has Not Submitted Any Evidence to Establish Numerosity</u>

In the Third Circuit, the numerosity requirement of Rule 23(a) has "real teeth," and Plaintiff must submit evidence "specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding." *Mielo*, 897 F.3d at 484 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 596 (3d Cir. 2012)). Moreover, the Third

Circuit has rejected arguments that the class certification requirements are relaxed in connection with injunctive classes. *Mielo*, 897 F.3d at 487.

Plaintiff has not submitted any evidence specific to the putative New Jersey Class. Instead, she points to general list prices and sales of WFS in New York and California. Mot. at 27; SOF ¶ 32; Bauchner Decl. ¶ 13, Ex. K at Exs. A & C. This is insufficient. *See Marcus*, 687 F.3d at 597 ("Given the complete lack of evidence specific to BMWs purchased or leased in New Jersey . . . the District Court's numerosity ruling crossed the line separating inference and speculation"); *see also Mielo*, 897 F.3d at 485 (requiring evidence tailored to New Jersey).

**B.     Plaintiff Has Not Shown There Are Any Questions Common to the Putative Class**

The commonality prong of Rule 23(a) requires Plaintiff to show that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This language is "easy to misread, since any competently crafted class complaint literally raises common questions." *Mielo*, 897 F.3d at 487 (quoting *Dukes*, 564 U.S. at 349). "A complaint's mere recital of questions that happen to be shared by class members is not sufficient to obtain class certification." *Id.* (quotations omitted). Instead, commonality "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Id.* (citations omitted). Thus, Plaintiff must submit proof that her legal theory can be proven on a classwide basis. *See*

*Dukes*, 564 U.S. at 356 (holding that plaintiffs' scientific studies were "insufficient to establish that [their] theory can be proved on a classwide basis").

Relying on pre-*Dukes* case law, Plaintiff contends that she has raised a "common question—whether Defendants' labels are false or misleading." Mot. at 29. But Plaintiff has not submitted *any* proof to show that any other putative Class member has suffered the same alleged injury she has, let alone the "convincing proof" required by *Dukes*. 564 U.S. at 359. Absent such class proof, Plaintiff's allegations alone are insufficient to establish commonality. *See Eastman v. First Data Corp.*, 292 F.R.D. 181 (D.N.J. 2013) (denying class certification where plaintiffs failed to propose a method by which claims could be determined with common evidence); *see also Carter v. PJS of Parma, Inc.*, 2016 WL 3387597, at *4 (N.D. Ohio June 20, 2016) (holding plaintiffs' failure to "submit any evidence in support of their commonality contention" and their exclusive reliance on their allegations were "insufficient to meet their Rule 23(a) requirement"); *Allchin v. Volume Srvs., Inc.*, 2017 WL 3337141, at *5 (S.D. Cal. Aug. 4, 2017) (same).

Moreover, unlike Plaintiff, Defendants have produced proof related to the putative Class which shows that consumers have *not* suffered the same injury Plaintiff alleges. *See* Silverman Decl., Ex. I. █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████ *Id.* at 7. This

uncontradicted evidence shows that other members of the putative Class were not

misled into believing WFS are "healthy" as Plaintiff contends she was misled.

### C.    Plaintiff's Claims Are Not Typical of the Class

Plaintiff's Motion also fails because her claims are not "typical of the claims

or defenses" of the putative Class. *See* Fed. R. Civ. P. 23(a)(3). Typicality

"ensur[es] that the class representatives are sufficiently *similar* to the rest of the

class – in terms of their legal claims, factual circumstances, and stake in the

litigation – so that certifying those individuals to represent the class will be fair to

the rest of the proposed class." *In re Schering Plough Corp ERISA Litig.*, 589 F.3d

585, 597 (3d Cir. 2009) (emphasis in original). "A proposed class representative is

neither typical nor adequate if the representative is subject to a unique defense that

is likely to become a major focus of the litigation." *Beck v. Maximus, Inc.*, 457

F.3d 291, 301 (3d Cir. 2006).

Plaintiff's conclusory assertion that she has shown typicality fails on its face

because she has not provided any *evidence* of typicality. Her testimony regarding

her purchases of WFS also raises a number of unique issues and defenses that will

dominate this Action. She admitted that the primary reason she purchased WFS

36

was because she wanted a snack for her children that they would like.  *See supra* at 7-8.  She also bought WFS over competitor Mott's because the Welch's brand "jumped out" more.  Hall Tr. at 71:5-11.  Plaintiff admitted that she did not buy WFS for their fruit content, and she never noticed or cared about the switch to fruit puree.  *See id.* at 156:22-157:12; 159:12-15; 161:7-13; 202:19-21; 235:2-11; 249:17-19

Further, Plaintiff testified that she reviewed the WFS ingredient panel and knew the amount of sugar they contained, as well as ingredients like corn syrup and modified corn starch.  *See supra* at 8.  Yet she continued buying WFS.  *See supra* at p. 32.  To the extent she claims she relied on representations that WFS were a "better alternative" (*see* Hall Tr. at 80:13-18), she does not contend that that statement appeared anywhere on the WFS' packaging, which is the only advertising for WFS she ever saw.  *See id.* at 111:12-112:9; 233:17-234:14.

All of these fatal admissions negate a finding of typicality.  *See, e.g., Hammer v. Vital Pharm.*, 2015 WL 12844442, at * 5 (D.N.J. Mar. 31, 2015) (explaining that plaintiff's knowledge of the alleged misrepresentation prior to purchasing the product creates a "typicality problem"); *Rapcinsky v. Skinnygirl Cocktails, L.L.C*, 2013 WL 93636, at *8 (S.D.N.Y. Jan. 9, 2013) (plaintiff's claims were atypical, including because "his belief with respect to [the product's] naturalness was irrelevant to his purchasing decision").

**D.**   **Plaintiff Is Not an Adequate Representative of the Putative Class**

Rule 23(a) obligates the Court to examine Plaintiff's adequacy as a class representative to ensure she will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  A plaintiff is not an adequate class representative when it is "clear from the record that plaintiff's counsel, and not plaintiff, is the driving force behind this action," and such a "cart before the horse approach to litigation is not the proper mechanism for the vindication of legal rights."  *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777, at *2 (N.D. Cal. Apr. 25, 2007) (citations omitted).

Here, like *Bodner*, Plaintiff "learned" of her claims from her counsel, who cut and pasted Plaintiff's minor specific allegations information into a complaint that was copied nearly verbatim from the Atik Complaint.  Before that, she had been fully aware of the nutritional content of WFS but had never felt misled by the WFS' packaging.  *See supra* at 8; Hall Tr. at 109:4-13; 148:12-23; 150:19-151:10. She also did not read her Complaint before it was filed and did not know the bases for many of its central allegations.  *See id.* at 202:8-18; 204:14-205:3; 232:5-18; 233:12-16; 248:22-249:22; 250:3-10; 254:4-7; 262:7-19.  Plaintiff did not meet her counsel until the day of her deposition.  *See id.* at 14:10-12.  She had no role in responding to Defendants' discovery before Plaintiff's Counsel served them and, in fact, was not even aware of the document requests Defendants served.  *See id.* at

30:17-34:20; 35:5-36:2; 39:11-21; 40:5-7; 42:9-43:11; 279:23-280:3.  Plaintiff did

not even submit a declaration in support of this Motion.

Additionally, Plaintiff is an inadequate representative because she has

abandoned a significant right of the putative Class: its claim to monetary damages.

The Third Circuit has cautioned that "[b]y seeking only partial relief, [plaintiff]

may be engaging in claim splitting, which is generally prohibited by the doctrine of

*res judicata.*" *Nafar v. Hollywood Tanning Sys.*, 339 F. App'x 216, 224 (3d Cir.

2009).  "Other courts agree that the existence of claim splitting constitutes a

compelling reason to deny class certification." *Krueger v. Wyeth, Inc.*, 2008 WL

481956, at *3 (S.D. Cal. Feb. 19, 2008); *see also McClain v. Lufkin Indus., Inc.*,

519 F.3d 264, 283 (5th Cir. 2008) (plaintiffs created a "serious conflict of interest"

and "sacrifice[d] class members' rights to avail themselves of significant legal

remedies" by dropping the class's demand for monetary damages and pursuing

only a Rule 23(b)(2) class); *Sanchez v. Wal Mart Stores, Inc.*, 2009 WL 1514435,

at *3 (E.D. Cal. May 28, 2009) (plaintiff rendered inadequate class representative

for failing to pursue all remedies available, thus creating a conflict of interest

between plaintiff and the class).[2]

---

[2] Plaintiff was required to move to certify her class claims by January 25, 2019.  Any class claims for which she did not seek certification by that date, including her proposed damages class, should be struck from the Complaint.  *Hayes v. Magnachip Semiconductor Corp.*, 2017 WL 512777, at * 1 (N.D. Cal. Feb. 8, 2017) (striking plaintiff's second class motion as untimely: "[Plaintiff] did not comply with the Court's order, which set a deadline for the filing of a class certification motion and did not contemplate successive class certification motions."); *Ayer v.*

The litigation to date had been focused on Plaintiff's proposed damages class, requiring significant resources from the parties and the Court on the permissible scope of expert discovery and whether Plaintiff would be permitted additional expert damages discovery following class certification. *See* Silverman Decl. ¶¶ 23-28.

Now, Plaintiff has abruptly changed course and only seeks certification of a Rule 23(b)(2) class. This abandonment of a significant legal right of the putative Class highlights why Rule 23(a)(4) is necessary. Plaintiff has abdicated her responsibility to oversee her counsel and to protect the interests of the Class, and without that oversight, Plaintiff's counsel has pursued a path that benefits no one other than themselves. For this additional reason, Plaintiff is inadequate to represent the putative Class.

## XI.  **CONCLUSION**

For the reasons explained above, Defendants respectfully request that the Court deny Plaintiff's Motion for Summary Judgment under Fed. R. Civ. Proc. 56 and Motion for Class Certification Fed. R. Civ. Proc. 23 in its entirety.

 Dated:  March 8, 2019                              HERRICK, FEINSTEIN LLP

                                                    By: /s/  *David R. King*

---

*Frontier Comm'n Corp.*, 2017 WL 3891358, at * 3 (C.D. Cal. Sept. 5, 2017) ("tactical gambit" to delay filing for class certification in order to take more discovery without leave of court, resulted in the class allegations being stricken).

**Of Counsel:**


VENABLE LLP
Daniel S. Silverman, Esq.
dsilverman@venable.com
Matthew W. Gurvitz, Esq.
mgurvitz@venable.com
2049 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone:  (310) 229-9900
Facsimile:   (310) 229-9901
*Admitted Pro Hac Vice*

HERRICK, FEINSTEIN LLP
David R. King, Esq.
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 274-2001
Fax: (973) 274-6404
dking@herrick.com

*Attorneys for Defendants, Welch
Foods Inc., A Cooperative and The
Promotion In Motion Companies,
Inc.*