# EXHIBIT V

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

LAUREN HALL, on behalf of
herself and others similarly situated,
Plaintiff,
v.
WELCH FOODS, INC., A COOPERATIVE,        Case. No.: 3:17-cv-05828-MKB-VMS
and THE PROMOTION IN MOTION
COMPANIES, INC.,

          Defendants.


**EXPERT REPORT OF MICHAEL BUCHANAN**

**I.   INTRODUCTION**

    **A.   Expert Credentials**

1. I am an applied economist and have significant experience in evaluating economic damages and statistical issues in complex litigation matters. I have lectured at Southern Methodist University on the topics of law and economics. I have served as an expert witness in economic damage matters. Previously, I was a Senior Managing Director in the Economic Consulting Practice at FTI Consulting ("FTI"). My responsibilities at FTI included providing economic, financial, and damage quantification consulting services to clients. Prior to FTI, I was employed at Mary Kay Cosmetics, Inc. My responsibilities included sales forecasting and product pricing analysis.

2. I have been retained in many litigation matters to analyze, review and evaluate economic damages using statistical and economic techniques. A copy of my CV, which summarizes my experience and qualifications, is attached as Exhibit 1. I am being paid $350 per hour for my services. I have no financial interest in the outcome of this litigation.

3. In performing my analyses and forming my opinions and conclusions, I have considered data and information from various sources, all of which are reasonably relied upon by experts in my field. I have also relied upon my professional experience and expertise, gathered over many years as a professional economist. Exhibit 2 contains a list of documents I have reviewed in rendering this report.

4. My analyses, opinions, and conclusions are based solely on the work performed by me, and those under my supervision, through the date of this report. This report is subject to change or modification should additional relevant information become available which bears on the analysis, opinions, or conclusions contained herein.

### B. Overview of Assignment

5. I was retained by Venable LLP on behalf of The Promotion In Motion Companies, Inc., ("PIM") and Welch Foods Inc., A Cooperative ("Welch's") to conduct analyses and to provide expert testimony regarding statistical and economic issues in this matter, including in response to the opinions contained in the October 24, 2017 Report of Dr. Jean-Pierre H. Dubé ("the Dubé Report"), and the testimony Dr. Dubé provided in his January 11, 2018 deposition.

### C. Summary of Findings

6. Professor Dubé's opinions in this matter are simply conjectures devoid of any empirical analysis and cannot be used to determine the amount of damages the purported class sustained. It is my understanding that Plaintiffs do not allege a full refund model. Therefore, Plaintiffs have not presented any empirical evidence of any economic damages to any person or class beyond pure speculation. Based on my understanding from counsel for defendants, Plaintiffs' deadline to offer expert opinions on damages passed on October 25, 2017. Dr. Dubé's opinion, therefore, will not be useful to the fact finder on the issue of damages.

7. The lack of analysis renders Dr. Dubé's conclusions completely unreliable and speculative. Specifically, his conclusions should be disregarded for at least the following reasons:

   a. Dr. Dubé's opinions and conjectures regarding the design and use of a conjoint analysis are simply text book generalizations of a statistical concept that were not operationalized and therefore offer no empirical evidence specific to this matter. Dr. Dubé doesn't actually do anything, he simply asserts that he could with no empirical basis.

    b. Dr. Dubé fails to provide any analyses or empirical support for his assertion that conducting a conjoint analysis will result in a class wide statistically appropriate economic damages model for allegations that include 17 products and 6 claims.

    c. Dr. Dubé merely asserts that the use of conjoint analysis is appropriate in this litigation, yet ignores numerous issues and details that must be addressed before a conjoint analysis can actually be performed and yield meaningful results. Below are a few issues he has failed to address:

        1. What specific products are to be analyzed (Welch's Fruit Snacks and Competitors)?

        2. What specific product attributes are to be analyzed?

        3. The specific levels of each attribute?

        4. What is the proposed sample size?

    d. I understand that Dr. Dubé had access to product sales and pricing information for the products at issue. However, he fails to use any of this information to analyze or support his claim that conjoint analysis could be used to estimate potential alleged economic damages on a class wide basis across 17 products with various package sizing and pricing.

I discuss my specific criticisms of the Dubé Report in detail in Section III below.

## II. BACKGROUND

8. Plaintiff alleges, among other allegations, "Defendants have engaged in a deceptive marketing campaign to convince consumers that Welch's Fruit Snacks contain significant amounts of the actual fruits shown in the marketing and on the labeling of the Products, are nutritious and healthful to consume, and are more healthful than similar products."[1]

9. Dr. Dubé states that the purpose of the Dubé Report is "provide an expert opinion on whether a method exists to determine damages in this case on a classwide basis using common evidence for the following misrepresentations and depictions (hereafter "Challenged Claims and

---

[1] First Amended Class Action Complaint, paragraph 2.

Depictions")."[2]  Dr. Dubé enumerates two specific issues on which he was asked to offer his opinions, including:[3]

> i. Defendants' use of pictures of real fruit on the packaging of the Challenged Products
>
> ii. Defendants' claims on the Challenged Products' label that "Fruit is our 1st Ingredient,"[2] that the Challenged Products are "Made With REAL Fruit"[3] and are "Now With More Real Fruit,"[4] and that the Challenged Products contain "100% Vitamin C" and "25% Vitamins A & E."

10. Dr. Dubé concludes, "It is my opinion that it is possible to determine classwide damages in this case using Conjoint Analysis."  Followed by the following general statements:[4]

> "i. The existence of a methodology that can measure and quantify the impact of the Challenged Claims and Depictions on the packaging of the Challenged Products.
>
> ii. A description of the methodology and its implementation, given the existence of such methodology and suitable data, and the feasibility of measuring (a) the incremental consumer willingness-to-pay for the Challenged Products due to the Challenged Claims and Depictions; and (b) the price premium charged for the Challenged Products due to the Challenged Claims and Depictions."

11. I take issue with Dr. Dubé's opinions in this matter for several reasons, as discussed in detail in the following section.  Merely stating that conjoint analysis is suitable for measuring a price premium or willingness to pay is completely different from the practicality of actually providing specifics on performing such an analysis for 17 products that are available in various package sizes and prices.

### III. EVALUATION OF THE DUBÉ REPORT

**A.  Dr. Dubé Offers No Empirical Support for His Mere Conjecture that a Conjoint Analysis is Statistically Appropriate in this Matter**

12. Dr. Dubé has not provided any empirical or economic data to evaluate in this matter, despite having access to documents produced in this litigation that include volume and pricing data of the products at issue.

> **"I have not done any calculations…"[5]**

---

[2] Dubé Report, paragraph 2
[3] Dubé Report, paragraph 2
[4] Dubé Report, paragraph 3.
[5] Deposition of Dr. Dubé, page 57, line 18.

13. Dr. Dubé states he is "the director of the Booth School's Kilts Center for Marketing which, amongst other functions, serves as the official distributor of Nielsen's Consumer Packaged Goods (hereafter CPG) databases for academic usage worldwide. These databases include household purchases and store-level sales and marketing data for packaged snack foods like the Challenged Products."[6] Despite all these resources, Dr. Dubé has not put forth one scintilla of empirical evidence in his report that would assist in the calculation of economic damages or even provide the details of a survey that would indicate that a conjoint analysis is feasible in this matter. Simply put, Dr. Dubé has merely asserted that it is possible to perform a conjoint analysis for 17 products across 6 claims without offering any relevant data and he does not discuss what is realistically possible in this matter.

14. Dr. Dubé's report is 19 pages long with 34 paragraphs, yet only one paragraph contains information on potential variables regarding the actual implementation of a survey for a conjoint analysis and that paragraph starts with "I would likely".

> "For the purposes of this case, **I would likely include** the following product features to study consumers' preferences for fruit snacks: Brand name, purchase price, labeling information regarding fruit content and vitamin content, and visual depictions of fruit. Fruit snacks can have different levels of these features. The levels of these features would be varied in the survey to create product configurations (or profiles) of fruit snacks. Three different product profiles would be presented at a time to survey respondents in the form of a choice task to determine which of the product profiles they would choose. In each choice task, respondents would also be asked whether or not they would purchase the fruit snack product they chose at the price indicated."[7]

15. This paragraph does not contain a model or any empirical data to evaluate nor is there any survey framework presented to evaluate the potential design of an actual survey for a conjoint analysis in this matter. The paragraph starts with the term "likely," so it appears Dr. Dubé is not even clear that his conjectures will be the foundational framework for his conjoint analysis. Dr. Dubé confirms as much in his report and deposition:

> **"At this time, the exact set of included features has not yet been finalized."[8]**

---

[6] Dubé Report, paragraph 6.
[7] Dubé Report, paragraph 21. Emphasis added.
[8] Dubé Report, footnote 14.

5

16. In order to reliably state that a conjoint analysis can provide a measure of classwide damages with any reasonable level of statistical certainty, one should at least state the design of the conjoint analysis with specificity regarding which attributes and levels or even products that are to be analyzed.

### B. Dr. Dubé Offers No Explanation on How a Conjoint Analysis Can Estimate Economic Damages for 17 Product SKUS in this Matter

17. Dr. Dubé claims his conjoint analysis will ultimately be able to calculate classwide damages for 6 different claims across 17 different Welch's Fruit Snack products.[9]  Dr. Dubé fails to note if the six claims are independent or correlated.  Correlated claims could compound the complexity of how he would conduct a survey or measure the claims.

18. Of course, we don't know if the claims are correlated because Dr. Dubé has not performed any analysis or even provided a framework regarding how a conjoint analysis will estimate classwide economic damages.  Simply put, his report is merely conjecture that a conjoint analysis will result in his ability to calculate damages for such a diverse offering of products.

## IV. The Dubé Report Provides a Theory, Not a Calculation

19. Dr. Dubé's testimony confirms that he has simply provided a theory and not performed any empirical analyses that one would expect when concluding classwide damages could be calculated using a conjoint analysis for 17 products.

> "…So my task, of course, in this case is to **propose a method** to evaluate class-wide economic damages."[10]
>
> "I proposed a method, a theory, a model,…"[11]

20. Dr. Dubé believes he can design a study, but he has not, which will "teach us about the six challenged representations."[12]  He states this without knowing all the relevant attributes of the

---

[9] Deposition of Dr. Dubé, page 53, lines 3-5. "Q  So six challenged statements across 17 products?  A  Sounds right."
[10] Deposition of Dr. Dubé, page 40 lines 2-4.
[11] Deposition of Dr. Dubé, page 73, line 22.
[12] Deposition of Dr. Dubé, page 54, lines 14-15.

products that he would potentially need to include in a survey. One of the first steps in conducting a survey is to conduct a pilot survey to determine what attributes are relevant and to determine if the questions are clear to respondents. In this matter, Dr. Dubé has not taken this step.

> "**I believe I can design a study** that will teach us about the six challenged representations, yes."[13]
>
> "In this case **I have not yet conducted a survey**."[14]
>
> "Q Well, I want to know what your opinion is. With 6 challenged representations across 17 products, what scope of survey would you need to test all of those variations?
> A So the complete answer to your question is typically we don't just run a study. You design your survey and **you run a pilot study** with a convenient sample, a small sample. And then **depending on precisions in that sample**, I would then pick the appropriate sample size."[15]

21. Dr. Dubé states he has presented a falsifiable theory and then, remarkably, he reached a conclusion before testing the theory or conducting a survey for 6 claims across 17 products.

> "just to put this in the right perspective, you can think of paragraph 2 as my testable hypotheses and **I've proposed a method that is falsifiable**. In other words, I could find empirically -- **there's a possibility I could find there's no effect.**"[16]

22. Consider the prerequisite to publish an article in a peer reviewed journal that Dr. Dubé testified about in his deposition:

> "going through the article and making sure that the -- that facts are correct, especially in methodological papers that the methods are executed correctly, that the models are developed and solved correctly."[17]

23. Dr. Dubé has not developed any useful facts or information in his report to actually quantify or model potential economic damages or even put together a cogent plan of features to include

---

[13] Deposition of Dr. Dubé, page 54, lines 14-16. Emphasis added.
[14] Deposition of Dr. Dubé, page 42, lines 11-12. Emphasis added.
[15] Deposition of Dr. Dubé, page 53, lines 16-21. Emphasis added.
[16] Deposition of Dr. Dubé, page 82, lines 16-2 and page 83, lines 1-6. Emphasis added.
[17] Deposition of Dr. Dubé, page 18, lines 13-17.

in a survey for this matter. The act of proposing a method is not same as providing specific facts or a rigorous analysis required in calculating classwide economic damages. Dr. Dubé should know this from his experience of publishing articles in a peer-reviewed journal. In fact, Dr. Dubé has never actually calculated class wide damages based on the model he proposes. Thus it is premature to assume that one could with no empirical basis.

> "Q In any of those cases, have you actually calculated the damages that you allege were attributable to the class?
> A I did not"[18]

> "…I have never actually calculated damages…"[19]

24. Dr. Dubé has proposed a theory without analyzing and reviewing information that has been produced or is generally available in the public domain.

> "Q Have you reviewed sales data for the defendants with respect to the products at issue in this case for the class period?
> A **I have not reviewed actual sales data**."[20]

> Question: "Did you do any independent investigation as to what other potential competitors might be that should have been included?
>
> "**I've not done that at this time** because I was not yet required to design the survey and implement it as of yet. But when we get to the point of running the study, I would then **collect more data to validate the relevance**, if you will, like **who are the big competitors** and or not, and then in that list that you mentioned which of those products sell with sufficient -- with sufficient frequency as to be warranted as relevant to the case."[21]

25. Rather than consider specific facts relevant to the statistical appropriateness, design, and implementation of a survey in this matter, Dr. Dubé merely assumed that he could reasonably and reliably conduct a survey. Such an assumption with no empirical support is completely speculative, rendering it unreliable.

---

[18] Deposition of Dr. Dubé, page 32, lines 15-18.
[19] Deposition of Dr. Dubé, page 32, line 25.
[20] Deposition of Dr. Dubé, page 55, lines 3-6. Emphasis added.
[21] Deposition of Dr. Dubé, page 63 lines 18-25 and page 64, lines 1-5. Emphasis added.

26. Finally, Dr. Dubé's opinion in this matter is predicated on the implicit assumption that the members of the class and those outside the class are similar enough such that a common population exists from which to draw a survey sample. Dr. Dubé provides no analysis or discussion in support of this assumption.

## V. CONCLUSION

27. Dr. Dubé fails to provide any details of how his proffered analyses should be conducted in this particular case, focusing instead on a general description of how conjoint analysis works without any application or consideration of the specific facts of this case. Dr. Dubé provided no evidence of economic damages to any consumer. Based on my understanding from Defendants' counsel, Dr. Dubé's deadline to attempt to calculate class wide damages has passed. Thus, Dr. Dubé has not, and cannot, set forth an opinion on any amount of damage in this matter.

28. For all of the reasons enumerated above, it is my opinion that the Dubé Report suffers from speculative assumptions and a general lack of analysis specific to the current matter. Because of the speculative conclusions provided by Dr. Dubé, his opinions regarding the statistical appropriateness and usefulness of a conjoint analysis and survey of potential class members and non-class members in this matter is speculative and unreliable. They don't mean anything because he hasn't done anything.

29. Dr. Dubé has not performed or adequately produced a framework containing any details, discussed above, to actually conduct a conjoint analysis. Thus, it is impossible for me (from a statistical perspective) to evaluate any real data or empirical results since they do not exist.

30. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, executed in McKinney, TX on February 12, 2018.

*Mike Buchanan*

Michael Buchanan

9

# EXHIBIT 1

# Michael J. Buchanan

Economic Consulting and Statistical Analysis

mikeb@econagency.com



**900 Gray Branch Road**
**McKinney, TX 75071**
Tel: +1 214 577 2825

### EDUCATION

B.S., Economics with Financial Applications, Southern Methodist University

M.A., Applied Economics, Southern Methodist University

### EXPERTISE

Class Action / Antitrust
Labor/Employment Economics
FLSA / Wage and Hour
General Litigation
Intellectual Property

Michael Buchanan is an applied economist with a wide variety of statistical and economic experience in litigation matters as well as forecasting issues and general damages calculations. He has led and testified in cases regarding labor and employment matters, healthcare, antitrust, class actions, sampling, extrapolation, and damage estimates. He regularly works in the consolidation and statistical analysis of large, complex data sets.

Previously, Mr. Buchanan was a Senior Managing Director in FTI Consulting's Economic Consulting Services practice and product leader of the Labor and Employment practice.  Prior to joining FTI Consulting, Mr. Buchanan was a Director with KPMG LLP's Forensic Services practice. Mr. Buchanan was also with Mary Kay Inc. for five years as an applied econometrician. His responsibilities included managing the functions of forecasting, statistical modeling of compensation analysis, promotional events, pricing analysis, new product launches, business analysis and data control.

As an economic and statistics expert, Mr. Buchanan assists clients and counsel in analyzing and summarizing complex data. He has led or testified in matters regarding the use of econometric and statistical models for estimating exposure, calculated potential damages in labor, healthcare and general litigation matters.  He has constructed sampling techniques used to develop statistically reliable results for inclusion in expert testimony.  He has assisted healthcare clients and lending institutions in areas such as addressing allegations of fraudulent or improper billing practices and quantifying financial accuracy measures.

Examples of disputes:

<u>Class Action Matters:</u>

- Labor and Employment (e.g., class certification, misclassification, wage and hour, discrimination, and independent contractor issues).

- Healthcare:  Cases include medical coding issues, sample size, damage estimation and billing issues.

- False Advertising and Product Liability (e.g., "all natural claims" or allegations a product is not working or as advertised.

- Antitrust: Cases involving healthcare, vitamin industry, steel industry, gasoline industry and convenience stores. Analyzed monopolization claims in market alleged to have restricted employee movement and stunt developing technology and competition.

- Complex Damage Calculations (e.g., lost profits or wage and hour damage calculations)

- Forecasting (e.g., product sales or company sales)

- Intellectual Property (e.g., theft of trade secrets, trademark infringement)

1

### Labor and Employment Class Action

Mr. Buchanan has significant experience in providing expert services related to labor and employment matters. His experience includes conducting numerous exposure models, statistical analysis of liability and class certification issues, such as allegations of homogeneity and typicality. He has also been involved in designing and implementing surveys, observation studies, time in motion projects, and other data studies to assess class certification, liability issues, and damages issues related to class action matters. His analysis has included sampling techniques and evaluating the appropriateness of sampling.

### Wage and Hour Litigation

Mr. Buchanan has provided analyses of liability, damages, and class certification issues related to wage and hour claims. Mr. Buchanan utilizes some of the latest technology to analyze large datasets and to build flexible economic models to assist counsel in estimating potential exposure under a variety of scenarios for mediation, settlement discussions, and/or trial. His experience also includes implementing and analyzing surveys related to exempt status, hours worked, off-the-clock time, rest breaks and meal periods, and other wage and hour issues.

### Employment Discrimination Litigation

Mr. Buchanan has performed economic and statistical analyses related to class action and single plaintiff claims of employment discrimination. Mr. Buchanan is adept at combining many data sources to analyze discrimination claims.

### Other Labor and Employment Matters

- Retained and testified as economic and statistical expert for state and federal labor employment matters. Including;
- Analyzed time punch and payroll data to determine meal and rest break issues along with potential damages. Statistical analysis of variation across locations, time and employees.
- Analyzed and implemented sampling techniques for large data populations.
- Directed confidential pay equity studies for Fortune 500 Companies.
- Administered and applied survey data to determine characteristics of job duties of and thus appropriateness of a class.
- Analyzed class action issues of supervisors' claims of misclassification using economic analysis and surveys.
- Analyzed of delivery drivers' time, mileage and expenses.

### Consumer Class Action

- Performed economic analysis of cosmetic market. Using existing surveys and empirical data to determine what characteristics are important to buyers and are those characteristics uniform.
- Analyzed and rebutted plaintiff expert in False Claims cases regarding homeopathic products.
- Analyzed proposed consumer class action regarding "brakes" and "piston slapping" of a major automotive company.
- Analyzed transactions and their characteristics that may result in exposure. Nationwide analysis of every store including unique characteristics that changed over time. Model of alleged damages based on multiple scenarios.
- Examined deceptive claims with respect to battery life from an economic prospective. Industry analysis of computer features and pricing. Sampling and other economic analysis were also provided.
- Statistically analyzed the failure rate of water pipes. FTI also provided a rebuttal analysis to Plaintiff's expert report. Analysis included merging data for all actual water pipe installations, scheduled pipe replacements and emergency repairs and broken pipes.

### Consumer Class Action (cont'd)

- Forecasted sales and calculated lost profits for company that had issues with pumps that dispensed the product. Rebuttal of opposing expert.
- Forecasted sales for major restaurant chain that lost sales due to a massive food recall.
- Forecasted sales for plastic manufacturer whose inventory software was not implemented properly.
- Forecasted NBA player salaries for contract negotiations.

2

### Sampling

- Opine on the appropriate sample size.
- Draw statistical samples in maters.
- Using sampling to create econometric and statistical models for estimating exposure and potential damages.

### Title IV / For-Profit School Litigation

- Statistical analysis of financial & enrollment counselors' compensation programs.
- Regression analysis with variables that might affect compensation.
- Statistical analysis of pay changes.
- Analysis of cohort default rates.
- Statistical analysis of grade inflation allegations.
- Statistical analysis of student attendance reports.

### Intellectual Property

- Trade Secret Misappropriation - Analysis of trade secret lost profits and cost savings. Provided trial testimony.
- Analyzed lost profit claims for biotech industry.
- Analyzed lost profit claims in patent infringement matter for national manufacturer of ceiling fans.
- Analyzed copyright infringement claims on behalf of the National Football League and the Baltimore Ravens.
- Analyzed lost profit claims in a trade secret matter for a national poultry producer in a theft of trade secrets matter.
- Performed lost profit analysis in a patent infringement matter for the photographic equipment industry.
- Analyzed trademark infringement claims for national hair product company.
- Performed statistical analysis in patent infringement matter for national golf club maker.
- Performed market analysis for international cosmetics firm in a patent infringement matter involving alpha-hydroxy acids.

### General Litigation

Mr. Buchanan has significant experience in providing expert services in a myriad of general litigation matters. Using his experience in consumer product forecasting and analysis coupled with his statistical and econometric background, Mr. Buchanan has analyzed lost profits, liability and class certification issues in various matters. These matters include:

- Performed analysis and quantification of destroyed product due to bio-engineered corn.
- Statistical and econometric analysis on computer product data and consumer demographics.
- Performed analysis of sales, costs and promotions to determine lost profits due to product recall.
- Performed statistical analysis of sales for overall and individual restaurants.
- Analysis of supply chain system and lost sales.
- Performed an analysis on lost sales, profits and units due to alleged faulty part.
- Analysis of lost profits for large beef recall in the fast food industry.
- Analysis of sales infringement using sales and demographic data.
- Breach of contract analysis including lost profit analysis
- Business interruption analysis.
- Analysis of Doctors' income and procedures.
- Analysis of vitamin market in Australia and multilevel marketing.

### Antitrust

- Mr. Buchanan has analyzed pricing fixing cases involving vitamin industry, steel industry, gasoline industry and convenience stores.

  - Price Fixing Analysis.
  - Quantification of Market Power.
  - Analysis of Anticompetitive Claims.
  - Analysis of Monopolization Claims.
  - Lost Profit Analysis.
  - Relevant Market Analysis.
  - Predatory Pricing Analysis.
  - Quantification of Damages in Antitrust Matters

### Other Research

- Market analysis providing insight to market trends, price elasticity, encroachment issues and product launches and promotions.
- Forecasting of sales and promotions for various industries. Working with local, national and international demographic data coupled with company data to model expected outcomes.

3

# Publications/Presentations

- Guest lecturer at Southern Methodist University in Department of Economics.
- Building a Forecast Model for international Subsidiaries, 1997 annual conference of the International Association of Business Forecasters.
- Co-authored a book entitled Pay and Performance in the NBA, (1995).
- "The Law of Demand and Lost Profits Analysis," in Economic Damages in IP Matters, edited by Daniel Slottje, New York: John Wiley & Son Publishing, (2006), 113-132 with RL Basmann, D.. Slottje and E. Maasoumi.
- "Econometric Analysis of Copyrights," Journal of Econometrics, (August 2007, Volume 139), with D. Millimet and D. Slottje.

# Expert Witness Testimony

- Tyson Foods, Inc. v. ConAgra, Inc. and ConAgra Poultry, Inc. Court: Chancery Court, Washington County, AR; Case No. E-99-1322.

- Jeannie Dyess v. Pilgrim's Pride Corporation Court: U.S. District, Titus County, TX; Case No. 26,216.

- Dallas Cowboys Football Club, Limited & Sports Marketing International Inc. v. Univision Television Group, Inc., KUVN-TX Channel 23.  Case No. DV-99-00951.  Mediation

- AARP v. Kramer Lead Marketing Group, et al.  United States District Court - Middle District of Florida, Jacksonville Division; Case No. 3:03-CV-1033-J-99 MCR.

- Moll Industries, Inc. v. Schering-Plough Healthcare Products, Inc. CA No. 04-03337.

- General Motors Corporation "Piston Slap" Product liability litigation CA NO. MDL 04-1600.

- Fast Trak Construction, Inc. v. Great Western Business Services, LLC, Regis Reality I, LLC and Regis Property Management, Inc. v. Mohr Partners, Inc., and Art Four Hickory Corp. CA No 04-02779-G.

- Daniel Rubio v. New Century Mortgage Corporation, et. al. Orange County Superior Court; Case No. 05CC00063. Mediation

- Montrenes Cases:  Included Actions:  Lippert v. Montrenes Financial Services, Inc. and Donoso/Littell v. Montrenes Financial Services, Inc. Orange County Superior Court; Case No. JCCP 4414.

- Kenny Archila v. KFC U.S. Properties, Inc. United States District Court Central District of California Western Division; Case No. CV09-0107 R (FMOx).

- Domonique Hines v. KFC U.S. Properties, Inc. United States District Court Southern District of California; Case No. 3:09-cv-02422-JM-POR.

- Brian Behaein, Bersayna Clemente and Raquel Cruz v. Pizza Hut, Inc. Superior Court for the State of California for the County of Los Angeles (Central District); Case No. BC384563.

- Walgreen Company Overtime Cases: Cayabyab v. Walgreen Co. and Collins v. Walgreen Co. Los Angeles County Superior Court; Case No.: BC365439. Santa Clara County Superior Court; Case No.: 106CV-071163. Judicial Council Coordination Proceeding No. 4511.

- SimplexGrinnell LP v. National Automatic Sprinkler Industry Pension Fund. American Arbitration Association; Case No. 16 621 00134 08.

- Anna's Linen Overtime Cases: Included Actions Hernandez v. Anna's Linens Cos. Superior Court of California – County of Orange; Case Nos. OCSC 04NCC00660 and DSX GIC 840481.

- Julie Campanelli et. al. v. The Hershey Company. United States District Court - Northern District of California; Case No. 08-CV-01862-BZ.

- In Re Taco Bell Wage and Hour Actions. United States District Court – Eastern District of California, Fresno division. Master file: CV-F-07-1314 OWW/DLB.

- Thomas Stevens v. Fresh & Easy Neighborhood Market, Inc. Superior Court of California – Los Angeles; Case No. BC418826.

- Yvonne Taylor, et. al. v. Mercy Hospital of Pittsburgh, et. al. United States District Court - Western District of Pennsylvania; Case 2:09-cv-00377-CB

- William Tellous v. Acuity Specialty Products, Inc. and ZEP INC and DOES 1 through 100, inclusive, Case No.: JAMS Reference No. 1240021224

Michael J. Buchanan

- Isabel Edmiston, as an individual and on behalf of all others similarly situated v. Loma Linda University Medical Center – Murrieta; Physicians Hospital of Murrieta, LLC.  Los Angeles Superior Court; Case No. MCC–1300610.

- Enzo Forcellati and Lisa Roemmich, et al. v. Hyland's Inc., Standard Homeopathic Laboratorie, Inc., and Standard Homeopathic Company. United States District Court - Central District of California; Case No. 2:12-CV-01983 GHK.

- Elizabeth Frisari, et al., v. DISH Network L.L.C. American Arbitration Association Arbitration; AA Case No. 18 160 01431 12.

- Wood Resources Recovery, LLC, a Florida Limited Liability Company v. Gainesville Renewable Energy Center, LLC, a Delaware Limited Liability company and Bioresource Management, Inc.  Eighth Judicial Circuit in and for Alachua county, Florida; Case no. 2015-CA-001218

- Kim Allen, et. al. v. Hyland's Inc., Standard Homeopathic Laboratories, Inc., and Standard Homeopathic Company. United States District Court - Central District of California; Case No. 3:12-cv-1150-DMG.

- Bonnie Fish, Christopher Mino, Monica Lee Woosley, Lynda D. Hartman, Evolve Bank & Trust, an Arkansas bank and trust company v. GreatBanc Trust Company, an Illinois corporation; Lee Morgan, Asha Morgan Moran, and Chandra Attiken, Defendants, Morgan Family Foundation, New Party Defendant. United States District Court - Northern District of Illinois; Case No. 1:09-cv-01668.

- PACIFIC LOGISTICS CORP. vs. SING KIT LEONG aka S.K. LEONG, an individual; ICAT LOGISTICS, INC., CASE NO. VC065478

5

EXHIBIT 2

- Class Action Complaint: ALIZA ATIK and WINNIE LAU, on behalf of themselves and all others similarly situated, Plaintiffs, v. WELCH FOODS, INC., A COOPERATIVE, and THE PROMOTION IN MOTION COMPANIES, INC.
- First Amended Complaint: LAUREN HALL, on behalf of herself and others similarly situated, Plaintiff, WELCH FOODS, INC., A COOPERATIVE and THE PROMOTION IN MOTION COMPANIES, INC. Defendants.
- Expert Report of Jean-Pierre H. Dubé – October 24, 2017
- Deposition of Jean-Pierre H. Dubé – January 11, 2018
- Welch's Fruit Snack Survey Report by E. Deborah Jay, Ph.D. – January 17, 2018
- "Fruit Snacks MaxDiff + TURF Claims Assessment," prepared for Promotion in Motion, Inc. by Weinman Schnee Morais Inc., Bates No. PIM00041676.